In The



Court of Appeals



Ninth District of Texas at Beaumont


____________________



NO. 09-07-060 CV


____________________



MBM FINANCIAL CORPORATION n/k/a


MBM FINANCIAL INTERESTS, L.P. AND


MARIMON BUSINESS SYSTEMS, INC., Appellants



V.



THE WOODLANDS OPERATING COMPANY, L.P., Appellee






On Appeal from the 9th District Court


Montgomery County, Texas


Trial Cause No. 05-02-01551-CV






MEMORANDUM TO CLERK


 You are directed to make the following correction in the Opinion dated April 10,
2008:

 On page 10, the third sentence from the bottom should be changed to read, "Feb. 10,
2004, no pet.) (mem. op.) (citations omitted)."

 You will give notice of this correction in the original Opinion by sending a copy of
the corrected page accompanied by this memorandum to all interested parties who received
a copy of the original Opinion.

 Entered this the 14th day of April, 2008.

 PER CURIAM

In The



Court of Appeals



Ninth District of Texas at Beaumont


____________________



NO. 09-07-060 CV


____________________



MBM FINANCIAL CORPORATION n/k/a


MBM FINANCIAL INTERESTS, L.P. AND


MARIMON BUSINESS SYSTEMS, INC., Appellants



V.



THE WOODLANDS OPERATING COMPANY, L.P., Appellee






On Appeal from the 9th District Court


Montgomery County, Texas


Trial Cause No. 05-02-01551-CV






OPINION


 The Woodlands Operating Company, L.P. ("TWOC") sued MBM Financial
Corporation and Marimon Business Systems, Inc. (1) seeking declaratory relief, as well as
damages for breach of contract and fraud with respect to TWOC's lease and maintenance
agreements with MBM for office equipment. After a bench trial, the trial court entered
findings of fact and conclusions of law, issued five declarations in favor of TWOC, awarded
TWOC "actual damages" of $1,000, (2) and awarded TWOC attorney's fees in the amount of
$145,091.59. (3) MBM filed this appeal, in which it raises ten issues for our consideration. We
affirm in part, reverse and render in part, and reverse and remand in part.

The Evidence


 TWOC leased approximately twenty-two pieces of office equipment from MBM and
entered into a maintenance agreement with MBM for the equipment. The agreements
provided that TWOC had a period of 180 days to 90 days before the lease was to terminate
to give notice of intent not to renew. In addition, the contracts provided that the lease term
would automatically renew for another year if MBM did not receive timely notice of
TWOC's intent not to renew. Furthermore, the agreements directed that if the customer
elected not to renew, the customer was responsible for transporting the equipment to a
location designated by MBM. The parties also added an addendum to the agreements. The
addendum provided that if TWOC was dissatisfied with MBM's equipment or services,
TWOC would give MBM thirty days' notice, and if TWOC was still dissatisfied, TWOC
could terminate the agreement "without penalty or question[,]" and MBM would pick up the
equipment within ten days. When TWOC executed the contracts, the contracts were not
signed by Anthony Marimon, and they did not contain a date of commencement; rather, the
only date shown on the documents was the date TWOC signed them. MBM typically did not
send fully executed and signed copies of the maintenance agreements to its customers, so
MBM's customers had to inquire about the termination dates. When TWOC decided not to
renew the agreements, TWOC contacted MBM to obtain the termination dates for the leases. 
 In response to TWOC's request for the termination dates, one of MBM's employees
sent TWOC an e-mail that listed the equipment and the termination dates. In determining
the date for providing notice that TWOC did not intend to renew the agreements, TWOC
relied upon the information MBM provided. TWOC sent a draft of the termination letter to
MBM, and MBM's representative told TWOC the draft was sufficient and the notice would
be timely. TWOC then finalized the notice letter and sent it to MBM on October 25, 2004. 

 Nancy Young Zeitler, a former employee of MBM, testified by deposition that when
she received the termination letter from TWOC, she believed the notice was timely, but
Anthony Marimon later told her that TWOC's notice was untimely. Zeitler testified that she
was surprised by Anthony Marimon's assertion that TWOC's notice was untimely. Crystal
Wallace, another former employee of MBM, testified by deposition that MBM calculated the
end of the lease term by the billing cycle; that is, the forty-eight month term began when
MBM first billed the customer for the equipment. Wallace testified that Anthony Marimon
frequently changed the rules for calculating the termination dates of maintenance agreements, 
and he proposed using the signature date to calculate the termination date for the MBM
agreements. According to Wallace, Anthony Marimon changed the rules to put himself in
a better bargaining position with the customer.

 Randy Davis, the chief financial officer of TWOC, testified by deposition. Davis
explained that he provided various affidavits in the litigation with MBM, and the affidavits
do not describe any of TWOC's damages. When asked whether TWOC suffered any actual
damages, he responded, "That's something that our attorney will have to respond to, or our
chief legal counsel." Davis testified that "at least a half dozen people" were involved in
dealing with the situation with MBM, but "I was not asked nor have I calculated any
numbers." Davis further testified, "At some point, I would assume we have to give you the
number. Again, it has not been calculated." Davis testified that MBM breached the contract
because TWOC "didn't get a satisfactory answer from [MBM] on where to send the copiers
back to." Davis testified that TWOC's fraud allegation against MBM was based upon "the
signing of the actual lease agreements and inserting the commencement date after the fact." 
Davis further explained, "subsequently those dates were inserted. . . . No documents had
been signed. So, my understanding of the fraud was they were signed after the fact, even
after the lawsuit was filed." Davis testified that TWOC's only damages were attorney's fees,
litigation expenses, and the "nominal costs" of "time spent by employees at the company." 
Davis also added that an independent contractor of TWOC worked on the issue with MBM,
which "was taking away from [his] normal responsibilities."

 Anthony Marimon testified by deposition that in calculating the commencement date,
"[w]e generally pick a billing date that we start from." Marimon explained that the date of
commencement could differ from the billing date, and that "[i]n this case, it did." He
testified that "[t]he commencement date was when we felt the equipment would be
installed. . . ." According to Marimon, the commencement date for the TWOC agreements
was not when the equipment was installed; rather, because TWOC had equipment installed
in December, January, and February, TWOC "had a common billing date that we needed to
meet which was the cycle billed from their previous vendor that was the last day of their
billing, and they wanted our billing to start at the same time." Marimon testified that he
selected the billing date in accordance with TWOC's request. He then further explained,
"[t]he commencement dates are the dates that were on the contracts. There was not any
discussion of a commencement date other than the date that the contract was signed." 
Marimon also testified that it is reasonable for a customer to rely on the information given
by MBM's employees concerning the termination dates. Marimon further testified that on
multiple occasions, TWOC asked MBM to designate a carrier for return of the equipment. 
Marimon also testified live at trial. He explained that he determined that TWOC's notice
letter was untimely "[b]y pulling the contracts[,]" most of which listed January 9 as the
commencement date.

 Karen West, TWOC's vice president and general counsel, testified that an independent
contractor for TWOC was assigned to deal with the problem with the nonrenewal notice. 
According to West, during a meeting, Marimon stated that "the nonrenewal notice was not
timely and that he wanted to try to settle with us by giving us an upgrade on equipment and
he would give us a deal on the equipment." West testified that she gave Marimon a copy of
the e-mails between representatives of TWOC and MBM, and Marimon did not attempt to
explain the e-mails. West explained that the lease-file Marimon brought to the meeting
contained only the undated lease that was not signed by Marimon, and when West questioned
him about the matter, Marimon told her that the lease-file was merely his "working file," and
that he had a fully-executed lease in his office. West further testified that Marimon told her
he would send a fully-executed copy, but he never did.

 West explained that after the meeting, TWOC attempted to return the equipment
because TWOC had arranged to replace it, and TWOC did not have a place to store MBM's
equipment. West testified that TWOC made several attempts to convince MBM to accept
the equipment. West eventually sent Marimon a letter, in which she informed him that
TWOC had selected a carrier and intended to deliver the equipment to his address. West then
received a letter from MBM's counsel, in which counsel declined to accept delivery of the
equipment and stated MBM's intention to continue billing TWOC for the equipment. West
sent another letter to MBM's counsel, with which she provided documents that showed the
termination dates MBM had provided to TWOC. TWOC then decided to file a declaratory
judgment action to have the trial court determine which party's position was correct with
respect to the nonrenewal notice. TWOC informed MBM's counsel that TWOC was filing
suit, and counsel told West MBM would accept delivery of the equipment, but MBM would
not waive any of its claims against TWOC.

 According to West, TWOC sought "[n]ominal damages, actual damages and
attorney's fees" for MBM's alleged fraud and breach of contract. (4) West opined that "[a]ll 
the causes of action are very intertwined[]" and are "all based on the same facts and
circumstances." West explained that employees of TWOC had to expend time and labor as
a result of MBM's position, but neither employees or independent contractors of TWOC
keep time sheets. According to West, TWOC has no reasonable way to calculate the value
of that time; therefore, TWOC only sought nominal damages for the alleged fraud and breach
of contract.

 Cynthia Dee Muse, the billing manager for MBM, testified that Marimon asked her
to verify when the terms of TWOC's leases began. According to Muse, MBM generally
designated the date it delivered the equipment as the commencement date. Muse testified
that she had "no idea" how Wallace calculated the dates the leases terminated. In addition,
Muse denied that MBM's file on the TWOC leases contained unexecuted agreements. 
Furthermore, Muse disagreed with the testimony of Wallace and Zeitler that customers had
to contact MBM to determine the termination dates of their leases. According to Muse,
MBM changed the billing cycles to accommodate TWOC's request to receive all of its
invoices at once.

Issue Two


 In issue two, MBM asserts that the evidence was legally and factually insufficient to
support TWOC's recovery of nominal damages. Because this issue, if sustained, could result
in rendition, we address it first. See Tex. R. App. P. 43.3; Glover v. Tex. Gen. Indem. Co.,
619 S.W.2d 400, 401 (Tex. 1981). Specifically, MBM challenges the trial court's findings
of fact numbers 45 and 47. In finding of fact number 45, the trial court found that "TWOC
incurred actual damages in the form of nominal damages as a result of the acts and/or
omissions of MBM." In finding of fact number 47, the trial court found that "TWOC
presented evidence of nominal damages." MBM also contends that "[t]he assignment of a
$1000 value to the Woodlands' alleged loss is pure speculation." (5)

 In an appeal from a bench trial, the trial court's findings of fact "have the same force
and dignity as a jury's verdict upon questions." Anderson v. City of Seven Points, 806
S.W.2d 791, 794 (Tex. 1991); see also Amador v. Berrospe, 961 S.W.2d 205, 207 (Tex.
App.--Houston [1st Dist.] 1996, writ denied). When the trial court's findings of fact are
challenged, we review the sufficiency of the evidence supporting the findings by applying
the same standards that we use in reviewing the legal or factual sufficiency of the evidence
supporting jury findings. BMC Software Belg. v. Marchand, 83 S.W.3d 789, 794 (Tex.
2002); Ortiz v. Jones, 917 S.W.2d 770, 772 (Tex. 1996); Catalina v. Blasdel, 881 S.W.2d
295, 297 (Tex. 1994). We review de novo a trial court's conclusions of law, and we will
uphold them if the judgment can be sustained on any legal theory supported by the evidence. 
BMC Software Belg., 83 S.W.3d at 794.

 Evidence is legally sufficient if it "would enable reasonable and fair-minded people
to reach the verdict under review." City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex.
2005). "[W]e credit evidence that supports the verdict if reasonable jurors could, and
disregard contrary evidence unless reasonable jurors could not." Kroger Tex. Ltd. P'ship v.
Suberu, 216 S.W.3d 788, 793 (Tex. 2006) (citing City of Keller, 168 S.W.3d at 827). When,
as here, a party also attacks the factual sufficiency of an adverse finding on an issue on which
the other party had the burden of proof, the appellant must demonstrate that there is
insufficient evidence to support the adverse finding. Hickey v. Couchman, 797 S.W.2d 103,
109 (Tex. App.--Corpus Christi 1990, writ denied). In reviewing an insufficiency of the
evidence challenge, we must consider all of the evidence that supports and that which is
contrary to the trial court's judgment. Plas-Tex, Inc. v. U.S. Steel Corp., 772 S.W.2d 442,
445 (Tex. 1989). As fact finder, the trial court determines the credibility of the witnesses and
the weight to be given their testimony. McGalliard v. Kuhlmann, 722 S.W.2d 694, 697 (Tex.
1986).

 A plaintiff may recover nominal damages when its legal rights have been invaded and
it either (1) has not sustained an actual loss or (2) has sustained an actual loss but failed to
prove the amount of the loss. Trevino v. Sw. Bell Tel. Co., 582 S.W.2d 582, 584 (Tex. Civ.
App.--Corpus Christi 1979, no writ). Nominal damages are damages in name only, not in
fact, and are generally awarded in a trivial amount, such as one dollar. Donnel v. Lara, 703
S.W.2d 257, 261 (Tex. App.--San Antonio 1985, writ ref'd n.r.e.); State v. Miles, 458 S.W.2d
943, 944 (Tex. Civ. App.--Waco 1970, writ ref'd n.r.e.); Lucas v. Morrison, 286 S.W.2d 190,
191-92 (Tex. Civ. App.--San Antonio 1956, no writ). Nominal damages are given "not as
an equivalent for the wrong, but to recognize a technical right." Ameritech Servs., Inc. v.
SCA Promotions, Inc., No. 05-03-00247-CV, 2004 WL 237760, at *3 (Tex. App.--Dallas
Feb. 10, 2004, no pet.) (mem. op.) (citations omitted).

 Because nominal damages are appropriate when a party fails to prove the precise
amount of its loss, or a party suffered no actual loss, we conclude nominal damages were
appropriate in this case. See generally Trevino, 582 S.W.2d at 584; Miles, 458 S.W.2d at
944. MBM apparently does not contend that the amount of $1,000 could not be an
appropriate measure of nominal damages; instead, MBM seems to contend that the $1,000
figure was "pure speculation." We do not review the legal and factual sufficiency of the
evidence supporting the amount of nominal damages awarded, since nominal damages are
not awarded to actually redress a wrong, but merely to recognize that a wrong has occurred. 
See generally Ameritech Servs., Inc., 2004 WL 237760, at *3. Rather, we simply review the
evidence to determine whether TWOC proved it suffered a wrong and, therefore, was entitled
to an award of nominal damages. See generally id.

 TWOC introduced evidence that it relied upon information provided by MBM in
determining the termination dates of the lease agreements. TWOC also introduced evidence
that although other MBM employees believed TWOC provided timely notice to MBM,
Marimon asserted that TWOC's notice was untimely, and that to put himself in a better
bargaining position with the customer, he had changed the rules regarding how to calculate
termination dates. TWOC offered evidence that MBM inserted the commencement dates on
the leases after TWOC executed them. TWOC further introduced evidence that upon timely
notice of intent not to renew, MBM was obligated to designate a means for TWOC to return
the equipment. In addition, TWOC introduced evidence that several TWOC employees, as
well as an independent contractor, had spent time and resources in dealing with MBM's
refusal to accept the return of the equipment, but neither the TWOC employees nor the
independent contractor kept time sheets. MBM offered evidence that it selected the billing
date in accordance with TWOC's request, and that the parties did not discuss any
commencement dates other than the date the contracts were signed. Marimon also testified
that TWOC's notices of intent not to renew were untimely.

 We conclude that because a reasonable and fair-minded fact finder could reach the
findings under review, the evidence supporting TWOC's nominal damages is legally
sufficient. See City of Keller, 168 S.W.3d at 827. Furthermore, considering all of the
evidence and noting that the fact finder determines the credibility of the witnesses and the
weight to be given their testimony, we conclude that the evidence supporting nominal
damages is factually sufficient. Therefore, we overrule issue two and affirm the trial court's
judgment with respect to TWOC's nominal damages.

Issue Four


 In issue four, MBM argues TWOC was not "entitled to the recovery of $195,091.59
in attorney['s] fees based on its breach of contract claim[.]" Section 38.001(8) of the Texas
Civil Practice and Remedies Code provides as follows:

 A person may recover reasonable attorney's fees from an individual or
corporation, in addition to the amount of a valid claim and costs, if the claim
is for:


 . . . .


 (8) an oral or written contract.


Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8) (Vernon 1997) (emphasis added). With the
exception of attorney's fees, the only damages TWOC recovered against MBM were nominal
damages in the amount of $1,000. A recovery of nominal damages does not support the
recovery of attorney's fees for breach of contract under section 38.001(8) of the Texas Civil
Practice and Remedies Code. Ameritech Servs., Inc., 2004 WL 237760, at *3-*4 (citing ITT
Commercial Fin. Corp. v. Riehn, 796 S.W.2d 248, 257 (Tex. App.--Dallas 1990, no writ));
see also Farrar v. Hobby, 506 U.S. 103, 114-15, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) (In
a civil rights action, a plaintiff who recovered nominal damages and did not receive equitable
relief could not recover attorney's fees.); Sw. Bell Mobile Sys., Inc. v. Franco, 971 S.W.2d
52, 56 (Tex. 1998) (In analyzing Farrar in an employment discrimination case, the Supreme
Court of Texas found that a plaintiff who recovered no damages and did not obtain equitable
relief could not recover attorney's fees.); Burgmann Seals Am., Inc. v. Cadenhead, 135
S.W.3d 854, 860-61 (Tex. App.--Houston [1st Dist.] 2004, pet. denied) (In an employment
discrimination case, "the controlling issue for the recovery of attorney's fees is not whether
the plaintiff is a prevailing party, but whether the judgment reflects that the plaintiff obtained
meaningful relief on his claims."). We conclude that TWOC was not entitled to recover
attorney's fees for its claims for breach of contract. Accordingly, we sustain issue four.



Issue Eight


 In issue eight, MBM contends TWOC is not entitled to recover attorney's fees based
upon its fraud claims. It is well settled in Texas that attorney's fees are not recoverable as
actual damages in fraud cases. Kneip v. United Bank-Victoria, 774 S.W.2d 757, 759 (Tex.
App.--Corpus Christi 1989, no writ) (citing Kilgore Fed. Sav. & Loan Assoc. v. Donnelly,
624 S.W.2d 933, 938 (Tex. App.--Tyler 1981, writ ref'd n.r.e.)). Accordingly, we sustain
issue eight.

Issue Seven


 In issue seven, MBM argues TWOC is not entitled to recover attorney's fees under
the Declaratory Judgments Act. Under the Uniform Declaratory Judgments Act ("UDJA"),
"[a] person interested under a . . . written contract . . . or whose rights, status, or other legal
relations are affected by a . . . contract . . . may have determined any question of construction
or validity arising under the . . . contract . . . and obtain a declaration of rights, status, or 
other legal relations thereunder." Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a)
(Vernon Supp. 2007). Generally, a declaratory judgment is not available to resolve issues
that are already pending in the same suit before the trial court. See Boatman v. Lites, 970
S.W.2d 41, 43 (Tex. App.--Tyler 1998, no pet.); see also BHP Pet. Co. v. Millard, 800
S.W.2d 838, 841 (Tex. 1990). "There is no basis for declaratory relief when a party is
seeking in the same action a different, enforceable remedy, and a judicial declaration would 

add nothing to what would be implicit or express in a final judgment for the enforceable
remedy." Univ. Printing Co. v. Premier Victorian Homes, Inc., 73 S.W.3d 283, 296 (Tex.
App.--Houston [1st Dist.] 2001, pet. denied). Section 37.009 of the UDJA provides that "In
any proceeding under this chapter, the court may award costs and reasonable and necessary
attorney's fees as are equitable and just." Tex. Civ. Prac. & Rem. Code Ann. § 37.009
(Vernon 1997). A party seeking attorney's fees must segregate recoverable attorney's fees
from unrecoverable attorney's fees. Tony Gullo Motors I, L.P. v. Chapa, 212 S.W.3d 299,
314 (Tex. 2006). "Intertwined facts do not make tort fees recoverable; it is only when
discrete legal services advance both a recoverable and unrecoverable claim that they are so
intertwined that they need not be segregated." Id. at 313-14.

 In this case, TWOC sought and received five declarations under the UDJA, as
follows:

 (1) TWOC has complied with its contractual obligations to provide notice of
its intent not to renew the Office Care Program agreements and Maintenance
Agreement; (2) [MBM] improperly failed to timely designate a carrier and
location for the return of the equipment; (3) MBM is estopped from or has
waived any claim that TWOC failed to provide timely notice of its intent not
to renew the Office Care Program agreements and Maintenance Agreement
because TWOC justifiably relied upon the termination dates provided by
MBM; (4) TWOC relied to its detriment on the termination dates provided by
MBM in entering into an agreement with another supplier for replacement
equipment; and (5) TWOC has suffered damage as a direct result of its
detrimental reliance upon the termination dates provided by MBM.


In addition to its action under the UDJA, TWOC asserted causes of action for fraud and
breach of contract. With respect to its breach of contract claim, TWOC pled that MBM 

 has breached and/or through its words and actions indicated that it is not going
to perform its obligations in the future under the Agreements by failing to
designate a location and carrier for the return of the equipment and failing to
accept the leased goods tendered as required. [MBM] sought to force the 
economic waste and uncertainties in derogation of its duties under the
Agreements and disrupted the daily business operations of TWOC.


TWOC further alleged that MBM 


 has breached its obligations under the Agreements by unilaterally selecting and
knowingly altering the commencement date in the Agreements without
disclosing this information to TWOC and by automatically renewing the
agreements for an additional twelve (12) month term and invoicing for an
accelerated twelve month (12) rental rate based upon the altered document.


 As a direct and proximate cause of [MBM's] conduct, TWOC has sustained
damages. . . .


With respect to its fraud claim, TWOC alleged that the agreements "were knowingly and
intentionally altered so as to include a commencement date which MBM knew to be different
from the date agreed upon by the parties and which conflicted with the representations made
by MBM and upon which TWOC relied in providing its notice of intent not to renew. . . ." 
 We find that the elements contained in the declarations TWOC sought (which pertain
to breach of contract, intentional misrepresentations by MBM, reliance on MBM's
misrepresentations, and damages) are somewhat duplicative of its fraud and breach of
contract claims in the same action. However, with declaration number one, TWOC also
sought a determination of whether it gave MBM timely notice of its intent not to renew the
agreements. The issue of whether TWOC gave MBM timely notice, which terminated the
parties' contractual relationship, is a separate question from that presented by MBM's alleged
breach in refusing to accept delivery of the equipment. We find that declaratory relief was
appropriate, and TWOC may recover attorney's fees accordingly. See Tex. Civ. Prac. &
Rem. Code Ann. §§ 37.004(a), 37.009.

 As the Supreme Court noted in Tony Gullo Motors v. Chapa, when a case involves
multiple claims, "many if not most legal fees in such cases cannot and need not be precisely
allocated to one claim or the other":

 Many of the services involved in preparing [one] claim for trial must still be
incurred if [other] claims are appended to it; adding the latter claims does not
render the former services unrecoverable. Requests for standard disclosures,
proof of background facts, depositions of the primary actors, discovery
motions and hearings, voir dire of the jury, and a host of other services may be
necessary whether a claim is filed alone or with others. To the extent such
services would have been incurred on a recoverable claim alone, they are not
disallowed simply because they do double service.


Tony Gullo Motors, 212 S.W.3d at 313. However, under the circumstances here, when "it
cannot be denied that at least some of the attorney's fees are attributable only to claims for
which fees are not recoverable," we must remand for a new trial on this issue because TWOC
failed to segregate its fees between the causes of action for which it could recover attorney's
fees (the UDJA action) and the causes of action for which it could not recover attorneys' fees
(nominal damages claim and fraud). See Tony Gullo Motors, 212 S.W.3d at 313-14. ("[I]f
any attorney's fees relate solely to a claim for which such fees are unrecoverable, a claimant
must segregate recoverable from unrecoverable fees."). We sustain issue seven in part and
overrule it in part.



Conclusion


 Having overruled issue two, having sustained issues four and eight, and having
sustained issue seven in part, we affirm the trial court's judgment of $1,000 nominal
damages, reverse and render judgment that TWOC take nothing on its claims for attorney's
fees for breach of contract and fraud, and reverse and remand for a new trial with respect to
TWOC's attorney's fees for the UDJA action. We need not address MBM's remaining
issues, as they would not result in greater relief. See Tex. R. App. P. 47.1.

 AFFIRMED IN PART; REVERSED AND RENDERED IN PART; REVERSED
AND REMANDED FOR NEW TRIAL IN PART.





 

 STEVE McKEITHEN

 Chief Justice


Submitted on December 13, 2007

Opinion Delivered April 10, 2008


Before McKeithen, C.J., Gaultney and Horton, JJ. 
1. For clarity, we refer to appellants as "MBM."
2. Although the trial court's judgment refers to the $1,000 as "actual damages," its
findings of fact and conclusions of law indicate that the trial court found that amount as
nominal damages.
3. The trial court also awarded additional attorney's fees of $20,000 for an appeal to
the Court of Appeals and $30,000 for an appeal to the Supreme Court of Texas.
4. Invoices indicating the amount of attorney's fees TWOC had incurred up to the time
of trial are included in the appellate record as Plaintiff's Exhibits 85 and 86.
5. MBM apparently does not contend that $1,000 could never be an appropriate
measure of nominal damages.