**MBM FINANCIAL CORPORATION, et al., Petitioners,**

v.

**The WOODLANDS OPERATING COMPANY, L.P., Respondent.**

No. 08–0390.

Supreme Court of Texas.

Argued March 12, 2009.

Decided Aug. 28, 2009.

Jennifer Bruch Hogan, Richard P. Hogan Jr. and Matthew E. Coveler, Hogan & Hogan, L.L.P., Phillip R. Livingston and Deanna H. Livingston, Livingston & Livingston, LLC, Houston, for Petitioners.

Karen D. Smith, Kirby D. Hopkins and Rachael McDonell Rolon, Drucker, Rutledge & Smith, L.L.P., The Woodlands, for Respondent.

Justice BRISTER delivered the opinion of the Court.

Since *Jarndyce v. Jarndyce,*[1] there have been charges that some cases benefit the lawyers more than the clients. But suits cannot be maintained solely for the attorney's fees; a client must gain something before attorney's fees can be awarded. While making losing parties bear their own attorney's fees may add injury to insult, the American Rule has long been that each party pays its own lawyers.

In this case, the plaintiff obtained a judgment for $1,000 in damages and almost $150,000 in attorney's fees. But there was no evidence to support the amount of the $1,000 award, and it is too large to constitute nominal damages. As the award to the client must be set aside, the attorney's fee award must also. Accordingly, we reverse and render a take-nothing judgment.

## I. Background

The Woodlands Operating Company leased the 19 copiers at issue here from MBM Financial Corporation[2] and installed them in late 2000 and early 2001. Each machine was covered by a separate four-year lease, with annual renewals thereafter unless notice was sent between 90 and 180 days before the end of the existing term. The leases required the Woodlands to return the copiers to a location MBM specified.

The Woodlands decided not to renew the leases in mid–2004 and asked MBM for the end-of-term dates and instructions for return. MBM employees provided the dates and approved a draft termination letter from the Woodlands. But when the actual termination letter arrived (viewing the evidence in the light favorable to the trial court's judgment),[3] MBM's president unilaterally changed the dates so the notice would be untimely and demanded rent for another year. To bolster MBM's position, he signed the leases and inserted commencement dates for the first time after the Woodlands filed suit. Until suit was filed, MBM also refused to designate a return location for the bulky equipment.

The Woodlands sued, asserting claims for breach of contract, fraud, and declaratory relief. MBM counterclaimed for additional rent of $160,000, though it later dropped that claim. After a two-day bench trial, the trial court rendered judgment awarding the Woodlands $1,000 in damages and $145,091.59 in attorney's fees through trial. The court of appeals affirmed the damages and part of the fee award.[4] On appeal, MBM challenges both.

## II. Nominal Damages & Breach of Contract

■ At trial, the Woodlands requested only nominal damages. The judgment describes the $1,000 award as "actual damages," but the trial court's findings and conclusions describe them as "actual damages in the form of nominal damages."

1. CHARLES DICKENS. BLEAK HOUSE (1853).

2. The equipment was leased from MBM Financial Corporation, now known as MBM Financial Interest L.P., and serviced by Marimon Business Systems, Inc. The two companies were operated from the same location by the same employees, and Anthony Marimon was the chief operating officer of both. Because the parties and judgment treat the two corporations as the same, we refer to both herein as "MBM," the party listed as lessor.

3. *See City of Keller v. Wilson,* 168 S.W.3d 802, 819–21 (Tex.2005) (discussing jury verdicts). The same standard of review applies to a trial court's findings following a bench trial. *See Catalina v. Blasdel,* 881 S.W.2d 295, 297 (Tex. 1994).

4. 251 S.W.3d 174, 184.

We agree with MBM that no evidence supports $1,000 as either.

The only damages mentioned at trial related to wasted time the Woodlands spent trying to get MBM's cooperation. But there was no evidence about the value of that time—either the quantity or the cost of it. The Woodlands blamed this gap on the difficulty of tracking the lost time, but never explained why it could not have been estimated. If the difficulty of proof always discharged the burden of proof, many litigants would simply not bother.[5] While the Woodlands could have estimated the value of wasted time, it could not ask the trial court to pull a figure from thin air.

Nevertheless, the Woodlands argues the award was justified as nominal damages. We agree nominal damages are available for breach of contract, as this Court has stated at least a dozen times.[6] As we wrote in 1853:

> The law is, that if the contract is proven to be broken, the law would give some damage, sufficient to authorize a verdict for the plaintiff, although, in the absence of proof of special loss, the damages would be nominal only.[7]

We are hardly alone in recognizing nominal damages for breach of contract; so do the First and Second Restatements,[8] Williston,[9] Corbin,[10] and Black's Law Dictionary.[11] While more generous damage measures make nominal damages rare, and some judges have questioned the reason behind them,[12] we agree that nominal

---

5. *See, e.g., Wal–Mart Stores, Inc. v. Gonzalez,* 968 S.W.2d 934, 937 (Tex.1998) ("[T]hat proof of causation is difficult does not provide a plaintiff with an excuse to avoid introducing some evidence of causation." (quoting *Schaefer v. Tex. Employers' Ins. Ass'n,* 612 S.W.2d 199, 205 (Tex.1980))).

6. *See, e.g., Lubbock Mfg. Co. v. Sames,* 598 S.W.2d 234, 237 (Tex.1980); *Travelers Ins. Co. v. Employers Cas. Co.,* 380 S.W.2d 610, 614–15 (Tex.1964); *Woodward v. Harlin,* 121 Tex. 46, 39 S.W.2d 8, 9 (1931); *Malakoff Gin Co. v. Riddlesperger,* 108 Tex. 273, 192 S.W. 530, 532 (1917); *Porter v. Kruegel,* 106 Tex. 29, 155 S.W. 174, 175 (1913); *Raymond v. Yarrington,* 96 Tex. 443, 73 S.W. 800, 804 (1903); *Davis v. Tex. & P. Ry.,* 91 Tex. 505, 44 S.W. 822, 823 (1898); *Seibert v. Bergman,* 91 Tex. 411, 44 S.W. 63, 64 (1898); *East Line & Red River R.R. v. Scott,* 72 Tex. 70, 10 S.W. 99, 102 (1888); *Stuart v. W. Union Tel. Co.,* 66 Tex. 580, 18 S.W. 351, 352 (1885); *Moore v. Anderson,* 30 Tex. 224, 231 (1867); *Hope v. Alley,* 9 Tex. 394, 395 (1853); *McGuire v. Osage Oil Corp.,* 55 S.W.2d 535, 537 (Tex. Comm'n App. 1932, holdings approved); *see also* Note, *Pleading—Necessity of Damage to Cause of Action,* 9 Tex. L. Rev. 111, 112 (1930) (citing cases).

7. *Hope,* 9 Tex. at 395.

8. Restatement (Second) of Contracts § 346(2) (1981) ("If the breach caused no loss or if the amount of the loss is not proved under the rules stated in this Chapter, a small sum fixed without regard to the amount of loss will be awarded as nominal damages."); *accord* Restatement(First) of Contracts § 328 (1932).

9. *See* 24 Samuel Williston & Richard A. Lord, a Treatise on the Law of Contracts § 64:6 (4th ed. 2002) ("An unexcused failure to perform a contract is a legal wrong. An action will therefore lie for the breach although it causes no injury. Nominal damages may then be awarded.").

10. *See* 11 Joseph M. Perillo, Corbin on Contracts § 55.10 (rev. ed. 2005) ("[F]or every breach of contract, a cause of action exists. . . . If the aggrieved party has suffered no compensable damages, a judgment for nominal damages will be entered.").

11. Black's Law Dictionary 418 (8th ed. 2004) (defining nominal damages as "[a] small amount fixed as damages for breach of contract without regard to the amount of harm").

12. *See Chronister Oil Co. v. Unocal Ref. & Mktg. (Union Oil Co. of Ca.),* 34 F.3d 462, 466 (7th Cir.1994) (Posner, C.J.) (stating that "for reasons we do not understand every victim of

damages may be recovered for breach of contract.

▮ But $1,000 is not nominal damages. "[T]he usual meaning of the phrase 'nominal damages' refers to an award of one dollar." [13] Despite substantial changes over the centuries in what a dollar will buy, it remains the standard award in federal cases,[14] and in Texas cases as well.[15] A few cases have awarded nominal damages of $10 and even $100,[16] but nominal damages are supposed to be a "trifling sum," [17] and $1,000 hardly falls in that category.[18]

▮ It appears from the record that the trial court awarded $1,000 as rough compensation for the wasted time the Woodlands incurred. But nominal damages are not for compensation; they are for cases in which there are no damages, or none that could ever be proved.[19] While a few older cases hold otherwise,[20] in recent decades the rule in Texas has been that nominal damages are not available when the harm is entirely economic and subject to proof (as opposed to non-economic harm to civil or property rights).[21] Thus, in *Gulf States Utilities*

a breach of contract, unlike a tort victim, is entitled" to nominal damages).

**13.** *Harkins v. Crews*, 907 S.W.2d 51, 61 (Tex. App.-San Antonio 1995, writ denied); *accord ITT Commercial Fin. Corp. v. Riehn*, 796 S.W.2d 248, 257 (Tex.App.-Dallas 1990, no writ) (stating that "nominal damages [are] traditionally the sum of one dollar or perhaps ten dollars"); *see also* PERILLO, *supra* note 10 ("The usual amount of nominal damages is six cents or one dollar....").

**14.** *See, e.g., Faragher v. City of Boca Raton*, 524 U.S. 775, 783, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); *Farrar v. Hobby*, 506 U.S. 103, 107, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992); *Carey v. Piphus*, 435 U.S. 247, 267, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978).

**15.** *See, e.g., Henry S. Miller Co. v. Evans*, 452 S.W.2d 426, 434 (Tex.1970); *Tex. Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*, 219 S.W.3d 563, 584 (Tex.App.-Austin 2007, pet. denied); *State v. Miles*, 458 S.W.2d 943, 944 (Tex.Civ.App.-Waco 1970, writ ref'd n.r.e.); *Lucas v. Morrison*, 286 S.W.2d 190, 192 (Tex.Civ.App.-San Antonio 1956, no writ); *Caswell v. J.S. McCall & Sons*, 163 S.W. 1001, 1002 (Tex.Civ.App.-Austin 1913, no writ).

**16.** *See, e.g., Williams v. Kaufman County*, 352 F.3d 994, 1014–15 (5th Cir.2003) (nominal damages of $100); *Malakoff Gin Co. v. Riddlesperger*, 108 Tex. 273, 192 S.W. 530, 532 (1917) (nominal damages of $10); *see also* David Pearce & Roger Halson, *Damages for Breach of Contract: Compensation, Restitution*

*and Vindication*, 28 OXFORD J. LEGAL STUD. 73, 76 n. 25 (2008) (noting that English cases can be found awarding nominal damages of £1, £2, £5, £10, and £15).

**17.** BLACK'S LAW DICTIONARY 418 (8th ed. 2004).

**18.** *See, e.g., Nicholas v. Pa. State Univ.*, 227 F.3d 133, 146 (3rd Cir.2000) (Alito, J.) (holding trial court properly reduced nominal damages award from $1,000 to $1).

**19.** BLACK'S LAW DICTIONARY 418 (8th ed. 2004) (defining nominal damages as "[a] trifling sum awarded when a legal injury is suffered but when there is no substantial loss or injury to be compensated"); *see County of Dallas v. Wiland*, 216 S.W.3d 344, 356 (Tex.2007) (noting that denial of procedural due process justified award of nominal damages when no harm resulted); *see also Malakoff Gin Co.*, 192 S.W. at 532; *Raymond v. Yarrington*, 96 Tex. 443, 73 S.W. 800, 804 (1903); *McGuire v. Osage Oil Corp.*, 55 S.W.2d 535, 537 (Tex. Comm'n App.1932, holdings approved); WILLISTON & LORD, *supra* note 9.

**20.** *See State v. Jackson*, 388 S.W.2d 924, 926 (Tex.1965); *Davis v. Tex. & P. Ry.*, 91 Tex. 505, 44 S.W. 822, 823 (1898); *Moore v. Anderson*, 30 Tex. 224, 231 (1867); *Hope v. Alley*, 9 Tex. 394, 395 (1853).

**21.** *See Gulf Coast Inv. Corp. v. Rothman*, 506 S.W.2d 856, 858 (Tex.1974) (rejecting claim for nominal damages when evidence showed plaintiff suffered no economic damage); *see also Coastal Oil & Gas Corp. v. Garza Energy*

*Co. v. Low*, we rejected nominal damages because actual damages had been incurred, yet the plaintiff failed to prove the amount.[22] "While mathematical precision is not required to establish the extent or amount of one's damages, one must bring forward the best evidence of the damage of which the situation admits...."[23] On this record, the $1,000 damage award to the Woodlands cannot be sustained as either actual or nominal damages.

■ While we normally remand for a new trial when there is some evidence to support an amount of actual damages,[24] in this case there was no evidence about the amount of damages at all. And "where the record shows as a matter of law that the plaintiff is entitled only to nominal damages, the appellate court will not reverse merely to enable him to recover such damages."[25] Accordingly, we must render judgment that the Woodlands take nothing as damages on its breach of contract claim.

### III. Attorney's Fees: Breach of Contract

■ Chapter 38 of the Civil Practices and Remedies Code allows recovery of attorney's fees in breach of contract cases: "A person may recover reasonable attor-

ney's fees ... in addition to the amount of a valid claim and costs, if the claim is for ... an oral or written contract."[26] To recover fees under this statute, a litigant must do two things: (1) prevail on a breach of contract claim, and (2) recover damages.[27] The second requirement is implied from the statute's language: for a fee recovery to be "in *addition* to the amount of a valid claim," the claimant must recover some amount on that claim.

■ While *some* damages are necessary to recover fees under this statute,[28] this Court has never said whether *nominal* damages are enough. But as the Woodlands can recover neither actual nor nominal damages, that question is not before us. Accordingly, the Woodlands' fee award cannot be affirmed based on Chapter 38.

### IV. Attorney's Fees: Fraud Arising From Breach of Contract

■ Alternatively, the Woodlands argues it is entitled to attorney's fees based on fraud arising from a breach of contract, pointing to this Court's reference to such an award in *Gill Savings Ass'n v. Chair*

*Trust*, 268 S.W.3d 1, 12 n. 36 (Tex.2008) (stating that nominal damages are available for mere trespass against possessory interest, but reversionary interest owner must prove actual economic damages); *Wiland*, 216 S.W.3d at 356–57 (stating that nominal damages are available for denial of procedural due process); *St. Paul Surplus Lines Ins. Co. v. Dal-Worth Tank Co.*, 974 S.W.2d 51, 53 (Tex.1998) (per curiam) (stating that nominal damages are available for loss of credit reputation).

**22.** 79 S.W.3d 561, 567 (Tex.2002).

**23.** *Rothman*, 506 S.W.2d at 858.

**24.** *See Guevara v. Ferrer*, 247 S.W.3d 662, 670 (Tex.2007); *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 314–15 (Tex.2006).

**25.** *Travelers Ins. Co. v. Employers Cas. Co.*, 380 S.W.2d 610, 614–15 (Tex.1964); *accord* WILLISTON & LORD, *supra* note 9 ("[A] judgment for the defendant will not be reversed merely to give the plaintiff nominal damages unless some substantial right of the plaintiff will thereby be protected.").

**26.** TEX. CIV. PRAC & REM CODE § 38.001.

**27.** *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 201 (Tex.2004) (per curiam); *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex.1997); *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 437 (Tex.1995).

**28.** *Mustang Pipeline Co.*, 134 S.W.3d at 201; *Green Int'l*, 951 S.W.2d at 390; *Beaston*, 907 S.W.2d at 437.

*King.*[29] But in Gill we merely reinstated bankruptcy and appellate fees; we did not address the court of appeals' award of fees for both contract and fraud on the basis that they were inextricably intertwined.[30] We explicitly rejected this intertwining exception in *Tony Gullo Motors I, L.P. v. Chapa* and reiterated that fees are not allowed for torts like fraud.[31] Thus, even if the Woodlands' fraud claim arose from a breach of contract, that is no basis for an attorney's fee award.

## V. Attorney's Fees: Bad Faith & Vexatious Conduct

 The Woodlands also argues it is entitled to attorney's fees because MBM "has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." The rules of civil procedure allow fees as a sanction against a party who files pleadings in bad faith [32] or abuses the discovery process.[33] But the Woodlands filed no motion for sanctions pursuant to those rules. Its fee claim was not based on MBM's *litigation* conduct but on its *pre-litigation* conduct; such fees are recoverable only if a contract or statute so provides. As the Woodlands cannot recover fees based on contract or fraud, allegations that the breach was in bad faith or the fraud vexatious do not change that result.

## VI. Attorney's Fees: Declaratory Judgment & Breach of Contract

The court of appeals affirmed part of the attorney's fee award based on the Declaratory Judgments Act.[34] MBM asserts four reasons why declaratory relief was improper and cannot support a fee award. We disagree that declaratory relief was improper but agree it cannot support the fee award here.

 First, MBM argues that declaratory relief is not available for contract claims (like those here) that are "fully matured and predicated upon a terminated relationship." But the Act says relief is available in contract cases "before *or after* there has been a breach," [35] so a matured breach is explicitly covered by the Act.[36] Further, declaratory relief is often available after a relationship has been terminated, as in cases concerning noncompetition covenants signed by former employees,[37] or offsetting judgments between former litigants.[38] MBM notes that we justified declaratory relief in

---

29. 797 S.W.2d 31, 31 (Tex.1990) (per curiam).

30. *See* 783 S.W.2d 674, 680 (Tex.App.-Houston [14th Dist.] 1989), *aff'd as modified,* 797 S.W.2d 31 (Tex.1990).

31. 212 S.W.3d 299, 311–14 (Tex.2006).

32. *See* TEX. R. CIV. P. 13.

33. *See, e.g.,* Tex. R. Civ. P. 215.1(d), 215.2(b)(8), 215.4(b), 215.5(b).

34. 251 S.W.3d 174, 183–84.

35. TEX. CIV. PRAC. & REM.CODE § 37.004(b) (emphasis added).

36. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 33 cmt. a (1982) ("But while the declaratory action is perhaps most important as a kind of preventive device, its use is not so restricted; it is also sometimes permitted after the wrong has been committed, when a coercive remedy could be awarded to or against the plaintiff in the declaratory action.").

37. *See Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding,* 289 S.W.3d 844, 852 (Tex. 2009) (declaring former employee's noncompetition covenant enforceable); *see also Lowenberg v. City of Dallas,* 261 S.W.3d 54, 59 (Tex.2008) (per curiam) (affirming declaratory judgment regarding unlawful tax that had been repealed).

38. *Bonham State Bank v. Beadle,* 907 S.W.2d 465, 468 (Tex. 1995).

*BHP Petroleum Co. v. Millard* by referring to an "ongoing and continuing relationship," but that was solely to show that the defendant's counterclaim (relating to the parties' future rights) went beyond the plaintiff's claim (relating to past damages alone).[39] We disagree that a party can immunize itself against declaratory relief by simply terminating any ongoing relationship.

■ Second, MBM urges that declarations of non-liability should be barred in contract cases, just as they are in tort cases. As we said in *Abor v. Black*:

> Because [the Act] appears to give the courts jurisdiction over declarations of non-liability of a potential defendant in a tort action, we find that the ... District Court had jurisdiction over the suit. However, we hold that the trial court should have declined to exercise such jurisdiction because it deprived the real plaintiff of the traditional right to choose the time and place of suit.[40]

But the "real plaintiff" and the "traditional right to choose the time and place of suit" are materially different in contract and tort cases. The "real" plaintiff in a tort action is the injured party, yet both parties often suffer injury if a contract collapses. When each party claims the other breached (as is usually the case),[41] it is hard to say who ought to be the "real" plaintiff. Here, for example, why should MBM get to choose the time and place of suit rather than the Woodlands? The Act itself specifically contemplates declarations that are negative (non-liability) as well as affirmative (liability).[42] And historically, declarations of non-liability under a contract have been among the most common suits filed under the Act, including:

- suits by insurers to declare non-liability under a duty-to-defend clause,[43]

- suits by employees to declare non-liability under a covenant not to compete,[44] and

- suits by a party to declare non-liability for higher or additional payments.[45]

Extending the bar against declarations of non-liability from tort to contract cases would drastically handicap declaratory-judgment practice in Texas.

**39.** 800 S.W.2d 838, 841–42 (Tex.1990).

**40.** 695 S.W.2d 564, 566 (Tex.1985).

**41.** *See, e.g., Mustang Pipeline Co. v. Driver Pipeline Co.,* 134 S.W.3d 195, 200 (Tex.2004) (per curiam); *Bennett v. Cochran,* 96 S.W.3d 227, 228 (Tex.2002) (per curiam); *Callahan & Assocs. v. Orangefield Indep. Sch. Dist.,* 92 S.W.3d 841, 842 (Tex.2002) (per curiam); *State ex rel. Dep't of Criminal Justice v. Vita-Pro Foods, Inc.,* 8 S.W.3d 316, 321 (Tex. 1999); *Stuart v. Bayless,* 964 S.W.2d 920, 921 (Tex.1998) (per curiam); *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.,* 960 S.W.2d 41, 43 (Tex.1998); *Green Int'l, Inc. v. Solis,* 951 S.W.2d 384, 386 (Tex. 1997); *Stewart Title Guar. Co. v. Aiello,* 941 S.W.2d 68, 70 (Tex.1997); *Mancorp, Inc. v. Culpepper,* 802 S.W.2d 226, 227 (Tex.1990).

**42.** Tex. Civ. Prac & Rem. Code § 37.003(b) ("The declaration may be either affirmative or negative in form and effect, and the declaration has the force and effect of a final judgment or decree.").

**43.** *See, e.g., Fairfield Ins. Co. v. Stephens Martin Paving, LP,* 246 S.W.3d 653 (Tex.2008); *Farmers Tex. County Mut. Ins. Co. v. Griffin,* 955 S.W.2d 81 (Tex.1997) (per curiam); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchants Fast Motor Lines, Inc.,* 939 S.W.2d 139 (Tex.1997) (per curiam); *Liberty Mut. Fire Ins. Co. v. Sanford,* 879 S.W.2d 9 (Tex.1994) (per curiam).

**44.** *See, e.g., Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding,* 289 S.W.3d 844 (Tex. 2009); *In re AutoNation, Inc.,* 228 S.W.3d 663 (Tex.2007).

**45.** *See, e.g., Yzaguirre v. KCS Res., Inc.,* 53 S.W.3d 368, 370 (Tex.2001); *VitaPro Foods, Inc.,* 8 S.W.3d at 321.

Third, MBM argues that declaratory judgments are available only if there is no adequate alternative cause of action. But this has never been the rule in Texas. Shortly after the Legislature passed the Act in 1943,[46] this Court adopted exactly the opposite rule, stating that "the existence of another adequate remedy does not bar the right to maintain an action for declaratory judgment" and finding this rule supported by "better reasoning."[47] The federal courts follow the same rule, as Federal Rule of Civil Procedure 57 makes clear: "The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate." We agree the Act cannot be invoked when it would interfere with some other exclusive remedy[48] or some other entity's exclusive jurisdiction.[49] But prohibiting declaratory judgments whenever a breach of contract claim is available would negate the Act's explicit terms covering such claims.[50]

Yet while declaratory relief may be obtained under the Act in all these circumstances, that does not mean attorney's fees can too. Texas has long followed the "American Rule" prohibiting fee awards unless specifically provided by contract or statute.[51] By contrast, the Declaratory Judgments Act allows fee awards to either party in all cases.[52] If repleading a claim as a declaratory judgment could justify a fee award, attorney's fees would be available for all parties in all cases. That would repeal not only the American Rule but also the limits imposed on fee awards in other statutes. Accordingly, the rule is that a party cannot use the Act as a vehicle to obtain otherwise impermissible attorney's fees.[53]

---

**46.** Uniform Declaratory Judgments Act, 48th Leg., R.S., ch. 164, 1943 Tex. Gen. Laws 265.

**47.** *Cobb v. Harrington,* 144 Tex. 360, 190 S.W.2d 709, 714 (1945); *accord Tex. Liquor Control Bd. v. Canyon Creek Land Corp.,* 456 S.W.2d 891, 895 (Tex.1970); *Crow v. City of Corpus Christi,* 146 Tex. 558, 209 S.W.2d 922, 924 (1948); *see also McKinley v. McKinley,* 496 S.W.2d 540, 542 (Tex.1973).

**48.** *See, e.g., Martin v. Amerman,* 133 S.W.3d 262, 267 (Tex.2004) (noting that the Property Code describes trespass-to-try-title actions as *"the* method for determining title"); *John G. & Marie Stella Kenedy Mem'l Found. v. Dewhurst,* 90 S.W.3d 268, 289 (Tex.2002) (noting that Natural Resources Code provisions authorizing declaratory suits by coastal property owners do not provide for fees).

**49.** *See, e.g., In re Sw. Bell Tel. Co.,* 235 S.W.3d 619, 625 (Tex.2007) (holding declaratory relief unavailable until administrative remedies were exhausted); *Thomas v. Long,* 207 S.W.3d 334, 342 (Tex.2006) (same); *State v. Morales,* 869 S.W.2d 941, 942 (Tex.1994) (holding civil courts can declare criminal laws unconstitutional only in limited circumstances); *Canyon Creek Land Corp.,* 456 S.W.2d at 894 (holding civil courts generally should not entertain declaratory actions to overturn an administrative agency's interpretation of a penal statute the agency is to enforce); *Cobb,* 190 S.W.2d at 714 ("We do not hold that the declaratory judgment procedure may be used when a statute provides an administrative board or other special tribunal or special procedure for the particular type of case in hand as, for example, a workmen's compensation case.").

**50.** *See* Tex. Civ. Prac. & Rem.Code § 37.004(a), (b) (stating that "[a] contract may be construed either before or after there has been a breach," and that "[a] person interested under ... writings constituting a contract ... may have determined any question of construction or validity arising under the ... contract").

**51.** *See Tony Gullo Motors I, L.P. v. Chapa,* 212 S.W.3d 299, 310–11 (Tex.2006).

**52.** *See* Tex. Civ. Prac. & Rem Code § 37.009.

**53.** *See Martin,* 133 S.W.3d at 267; *THPD, Inc. v. Cont'l Imports, Inc.,* 260 S.W.3d 593, 619–20 (Tex.App.-Austin 2008, no pet.); *Warrantech Corp. v. Steadfast Ins. Co.,* 210 S.W.3d 760, 770 (Tex.App.-Fort Worth 2006, pet. denied); *Sani v. Powell,* 153 S.W.3d 736, 745

■ The Act was originally "intended as a speedy and effective remedy" for settling disputes before substantial damages were incurred.[54] It is "intended to provide a remedy that is simpler and less harsh than coercive relief, if it appears that a declaration might terminate the potential controversy."[55] But when a claim for declaratory relief is merely tacked onto a standard suit based on a matured breach of contract, allowing fees under Chapter 37 would frustrate the limits Chapter 38 imposes on such fee recoveries. And granting fees under Chapter 37 when they are not permitted under the specific common-law or statutory claims involved would violate the rule that specific provisions should prevail over general ones.[56] While the Legislature intended the Act to be remedial,[57] it did not intend to supplant all other statutes and remedies.[58]

■ At trial, the Woodlands recovered no damages on its breach of contract claim, so it cannot recover fees under Chapter 38. Allowing it to recover the same fees under Chapter 37 would frustrate the provisions and limitations of the neighboring chapter in the same Code.[59] Accordingly, we hold the Woodlands can-

not recover attorney's fees under the Declaratory Judgments Act.

Nevertheless, the Woodlands argues it is entitled to fees because the declaratory relief it sought did more than merely duplicate the issues litigated in its contract and fraud claims. The five declarations the Woodlands obtained in the judgment were:

1. that the Woodlands "complied with its contractual obligations to provide notice of its intent not to renew";

2. that MBM "improperly failed to timely designate a carrier and location for the return";

3. that MBM's manipulation of the termination dates barred it from making "any claim that [the Woodlands] failed to provide timely notice";

4. that the Woodlands "relied to its detriment on the termination dates provided by MBM"; and

5. that the Woodlands "has suffered damage as a direct result of its detrimental reliance upon the termination dates provided by MBM."

(Tex.App.-Dallas 2005, pet. denied); *City of Houston v. Texan Land & Cattle Co.*, 138 S.W.3d 382, 392 (Tex.App.-Houston [14th Dist.] 2004, no pet.); *Sw. Guar. Trust Co. v. Hardy Road 13.4 Joint Venture*, 981 S.W.2d 951, 957 (Tex.App.-Houston [1st Dist.] 1998, pet. denied); *Boatman v. Lites*, 970 S.W.2d 41, 43 (Tex.App.-Tyler 1998, no pet.).

54. *Cobb*, 190 S.W.2d at 713.

55. RESTATEMENT (SECOND) OF JUDGMENTS § 33 cmt. c (1982).

56. *See, e.g.*, TEX. GOV'T CODE § 311.026(b) (requiring that specific statutory provisions prevail over general ones in statutory construction); *Strong v. Garrett*, 148 Tex. 265, 224 S.W.2d 471, 475 (1949) (noting the "general rule" that specific descriptions in deeds prevail over general ones).

57. *See* TEX. CIV. PRAC. & REM.CODE § 37.002(b).

58. *Crow v. City of Corpus Christi*, 146 Tex. 558, 209 S.W.2d 922, 924 (1948) ("[T]he remedy afforded by the Declaratory Judgment Act is additional and does not supplant any existing remedy."); RESTATEMENT (SECOND) OF JUDGMENTS § 33 cmt. c ("[D]eclaratory actions are to supplement rather than supersede other types of litigation.").

59. *Cf. City of Waco v. Lopez*, 259 S.W.3d 147, 153–55 (Tex.2008) (holding the Legislature did not intend to allow claimants to elect between Human Rights and Whistleblower Acts because differing procedures and remedies would frustrate legislative goals).

Whether the Woodlands sent timely notice of cancellation and MBM failed to designate a return location were part and parcel of the Woodlands' contract claim. And whether MBM misrepresented the termination dates and the Woodlands relied on those misrepresentations were duplicative of the Woodlands' fraud claim. Thus, the declarations sought by the Woodlands merely duplicated issues already before the trial court.

\* \* \*

It is easy to understand the Woodlands' frustration with MBM. Viewing the evidence in the proper light, MBM withheld information, changed renewal dates, and manipulated the truth to try to get more rent than it was entitled to. It raised dodges, defenses, and counterclaims at various stages that all eventually collapsed in a heap, but only after forcing the Woodlands to incur legal fees and costs. But to recover those fees, the Woodlands had to recover damages for breach of contract. That it failed to do. As Chief Justice Calvert wrote for this Court almost 50 years ago:

> Perhaps every successful litigant should be permitted to recover his attorney fees from the opposite party. But whether that policy would be wise is for the Legislature, not the courts, to decide. Apparently the Legislature has not thought it wise.[60]

Accordingly, we reverse the judgment of the court of appeals and render judgment that the Woodlands take nothing.

Justice O'NEILL did not participate in the decision.

60. *Van Zandt v. Fort Worth Press*, 359 S.W.2d 893, 896 (Tex.1962).