# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00526-CV

**Buttross V., Inc., Appellant**

**v.**

**Victoria Square Condominium Homeowners' Association, Inc., and John Muhich, Individually and d/b/a Storcorp Services, LLC, and Storcorp Services, LLC, Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT NO. D-1-GN-07-002721, HONORABLE SCOTT H. JENKINS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Buttross V., Inc. appeals a district court judgment in favor of appellees Victoria Square Condominium Homeowners' Association, Inc., John Muhich, and Storcorp Services, LLC on Buttross's claims for breach of contract and negligence. We will affirm the judgment.

## BACKGROUND

The Victoria Square Condominiums are comprised of four buildings, containing a total of forty-eight units, located in north Austin, near the intersection of Burnet Road and Steck Avenue. At all relevant times, the complex has been governed by a Declaration and Master Deed that establishes a condominium regime. The Victoria Square Condominium Homeowners' Association (the Association), a non-profit corporation, was established to manage the condominiums' common areas under the Declaration.

In January 2006, the Association contracted with John Muhich and Storcorp Services, LLC (Storcorp) to replace the roofs on all four buildings, which are common areas of the condominiums. The roofs had sustained hail damage and were leaking. Storcorp performed the work in January and February 2006, addressing the problem not by replacing the existing roofs, but by building metal roofs directly over the existing ones. As early as March 2006, however, the newly installed roofs began to leak, causing interior water damage. The roofs continued to leak despite Storcorp's efforts to repair them, and the Association terminated its relationship with Storcorp on October 6, 2006.

Amidst these ongoing roofing issues, on November 27, 2006, Buttross purchased fifteen units of the condominiums from Suzanne Edson of Housebuyers, Inc. The seller's disclosure described the existing problems with the roofs, indicating that the roofs were ineffective and would have to be completely replaced. The disclosure also indicated that there had been water penetration and damage to the units. After having read the seller's disclosure, Buttross purchased the units "as is."

In December 2006, water penetrated and damaged four of Buttross's units. The ceiling in one of the units collapsed later that month, and the ceilings in three additional units collapsed in January 2007. Buttross contracted with a company that it owned to make necessary repairs and ultimately sold all four units by December 2007. In the meantime, despite the problems it had encountered with the units it purchased in 2006, Buttross purchased two additional units from different sellers, one on June 28, 2007, and another on July 2, 2007. By the time trial commenced in April 2009, Buttross had sold sixteen of the seventeen units it had purchased, the sole exception being the unit it bought on July 2, 2007.

On January 2, 2007, the Association adopted a First Amendment to its Declaration and Master Deed. Of relevance here, the amendments prohibited a single person or entity, termed an "investor-owner," from owning more than ten percent of the units in Victoria Square. If, at the time the January 2007

2

Amendment was adopted, a single person or entity already owned more than ten percent of the units, that investor-owner was prohibited from serving on the Association's board and from exercising more than a ten-percent voting right. These restrictions applied to Buttross, who owned over ten percent of Victoria Square's forty-eight units.

Complaining of the water damage sustained by four of the units it had initially purchased, Buttross brought causes of action against the Association for breach of fiduciary duty, breach of contract, and negligence, and against Storcorp for negligence. Following a bench trial, the district court ruled that Buttross take nothing on his claims against the Association. As for Buttross's claims against Storcorp, the district court found that the roofs installed by Storcorp were defective, but that Storcorp's acts or omissions had not proximately caused any damage to Buttross. The court also awarded the Association $30,000 in attorney's fees. Buttross appeals.

**ANALYSIS**

In its first issue, Buttross argues that the January 2007 Amendment to the Declaration was not validly adopted, as it was not approved by the Victoria Square owners, in violation of property code section 81.111. *See* Tex. Prop. Code Ann. § 81.111 (West 2007). As Buttross repeatedly acknowledges on appeal, it asserted these alleged statutory violations solely as a basis for relief under a breach-of-contract cause of action. The Association argues that Buttross failed to preserve error as to its breach-of-contract theory by failing to present it to the district court, whether through its pleadings, evidence, or argument, and by failing to request findings of fact. And, even if error were preserved, the Association contends, Buttross's claim fails, as it cannot show harm.

3

We agree with the Association that, even assuming that Buttross preserved error on this issue,[1] his breach of contract claim fails, as he cannot show that he sustained any damages as a result of the Association's alleged breach.

---

[1] In the "Facts" section of its petition, Buttross asserts that the following provisions of the January 2007 Amendment were "arbitrary and capricious" and affected no other Association member:

> any sale resulting in a single-entity purchaser's owning more than 5 units (10% of the VSCs) is null and void;

> any single entity owning more than 5 units (10% of the VSCs) cannot vote more than a 10% ownership interest; and

> any single entity owning more than 5 units (10% of the VSCs) cannot be elected to the Board of Directors.

Based on these allegations, Buttross asserted a cause of action for breach of contract:

> VSCHO breached the Contract with Buttross by amending the Declaration. The Board and its Directors exceeded their authority by denying *ex post facto* Buttross' right to buy units or to sell them to whomever it wished, or to sell them all to a single investor; reducing ex post facto Buttross' 34% ownership voting interest to 10% impairing Youssef Lahlou's voting rights as a Director; and (4) barring David Buttross from serving as a member of the Board. The Board further breached the Contract by amending the Declaration by ways other than to comply with FNMA guidelines without a 67% ownership interest vote.

These assertions in Buttross's petition expressly state that it challenges the Association's 2007 Amendment as a breach of contract. Buttross has not, therefore, waived this issue by failing to plead it, as the Association contends.

The Association also argues that the absence of—and Buttross's failure to request—a specific finding of fact that the Association violated the Declaration by illegally amending it waived any error on this point. However, as we will discuss, such a finding—whether made in Buttross's favor or not—would have had no effect on the district court's ruling, which determined that Buttross had incurred no damage as a result of the Association's alleged breach. Thus, whether or not Buttross was required to obtain a specific finding as to the allegedly invalid amendment is irrelevant as, in any case, Buttross cannot show that such a finding would have had any effect on his ability to prevail on his breach-of-contract cause of action.

4

To prevail on its breach-of-contract claim, Buttross was required to show (1) the existence of a valid contract; (2) performance or tentative performance by Buttross; (3) breach of the contract by the Association; and (4) damage to Buttross as a result of the Association's breach. *See Roundville Partners, L.L.C. v. Jones*, 118 S.W.3d 73, 82 (Tex. App.—Austin 2003, pet. denied). The district court found that:

> Plaintiff has not shown, by a preponderance of the evidence, that it sustained any compensable damages proximately caused by the conduct of Victoria Square.

This finding is sufficient to support the district court's judgment on Buttross's breach of contract claim (which requires that Buttross be damaged as a result of the Association's breach) regardless of whether the Association breached the contract by means of illegally adopting the Amendment.

While not entirely clear, we understand Buttross's argument to also challenge the sufficiency of the evidence to support the district court's finding that Buttross sustained no damages as a result of the Association's conduct. When a party challenges the legal sufficiency of the evidence supporting an adverse finding on an issue on which it has the burden of proof, that party can prevail only if it demonstrates that the evidence conclusively establishes all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). When conducting a legal-sufficiency review, we must view the evidence in the light most favorable to the district court's findings, "crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005). Moreover, we must indulge every reasonable inference that would support the district court's findings. *Id.* at 822. The ultimate test for legal sufficiency is whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *See id.* at 827.

5

When a party challenges the factual sufficiency of the evidence supporting an adverse finding on an issue on which that party had the burden of proof, we consider whether the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Francis*, 46 S.W.3d at 241. In either case, we must consider, weigh, and examine all of the evidence in the record, both in support of and against the finding, to decide whether the finding should be set aside. *See id.*; *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989); *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex. 1986).

Buttross's complaints are as to the provisions in the 2007 Amendment that prevented its principal, David Buttross, from serving on the board and that allowed Buttross V. to vote only five of the fifteen units it owned. However, given the structure of the board and the voting provisions, Buttross cannot show that it suffered any damage as a result of these amendments. Under the Declaration, the board is made up of five members, who are elected by a majority of the condominium owners. Each of the forty-eight condominium owners has one vote. Even if Buttross had been able to vote more than five of its fifteen units, it cannot show that it would have been able to elect a board member of its choosing. And, even if someone of its choosing—presumably David Buttross—were elected, Buttross cannot show that its one vote would have had any effect on board decisions.

In its petition, Buttross claimed damages were for physical damage to its condos, lost rents, loss of value of the sold condos, monthly mortgage credits to some condo buyers pending the replacement of the roofs, and Association assessments and charges against Buttross's condo units from January 2007 through the sales dates. Given the structure of the board and the voting provisions, Buttross has presented no evidence to show that David Buttross's presence on the board—even if elected—would have had any impact on these alleged damages. Thus, Buttross cannot prevail on either its legal sufficiency or its factual sufficiency challenge. *See Francis*, 46 S.W.3d at 241.

6

Buttross contends that, whether it has shown economic damages or not, it can recover on its breach-of-contract claim as a party "adversely affected" by the Association's actions. *See* Tex. Prop. Code Ann. § 82.161(a) (West 2007). Although Buttross brought its action solely as a breach-of-contract claim, it cites to the property code as support for its argument that it had standing to challenge the January 2007 Amendment as a "person[] adversely affected" by it. *See id.* However, as Buttross repeatedly concedes, it brought its claim as a breach-of-contract cause of action, not as a statutory cause of action. Thus, regardless of the statutory provisions cited, Buttross must not simply show that it was "adversely affected" by the Association's action, as it contends, but, rather, must satisfy each element of a breach-of-contract claim—including proving that it incurred damages resulting from the Association's breach—to recover. *See Roundville Partners, L.L.C.*, 118 S.W.3d at 82.

Citing *MBM Financial Corp. v. Woodlands Operating Co., L.P.*, 292 S.W.3d 660, 664-65 (Tex. 2009), Buttross also argues that, even if we agree with the district court's no-damage determination, Buttross is still entitled to nominal damages resulting from the Association's breach. While nominal damages are recoverable for breach of contract, they are only available where a breach has caused only non-economic harm, and not where, as here, the damages alleged are entirely economic and subject to proof. *See id.* at 665-66. As noted, Buttross claimed purely economic damages—for physical damage to its condos, lost rents, loss of value of the sold condos, monthly mortgage credits to some condo buyers pending the replacement of the roofs, and Association assessments and charges against Buttross's condo units from January 2007 through the sales dates. Each of those measures of damages represent actual economic damages, and Buttross brought forth no proof that it had incurred any economic loss as a result of the Association's alleged breach. *See id.* Although Buttross now alleges harm to its property rights, at trial it sought to recover purely economic

7

damages and has, therefore, not preserved its argument that it is entitled to nominal, non-economic damages for our review. *See* Tex. R. App. P. 33.1.

Buttross's claim for attorney's fees depends on its prevailing on its breach-of-contract claim. As we have concluded that Buttross has not prevailed on its breach-of-contract claim, as it has not established damages, it is not entitled to recover attorney's fees on this claim. Accordingly, we overrule Buttross's first issue.

In its second issue, Buttross argues that the district court erred in rendering a take-nothing judgment on its negligence claim against Storcorp. To prevail on its negligence cause of action against Storcorp, Buttross was required to show that Storcorp owed it a legal duty and breached that duty, and that Buttross suffered damages proximately caused by Storcorp's breach. *See D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002) (citing *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex. 1987)).

Although Buttross correctly asserts that the district court found that "the cause of the leaking roofs, including interior water damage to the units bought by Plaintiff, was the defective Storcorp roofs," the district court did not find that Buttross sustained any damages proximately caused by Storcorp. Indeed, it found the contrary:

> Plaintiff has not shown, by a preponderance of the evidence, that it sustained any damages proximately caused by Victoria Square, John Muhich, or Storcorp.

The court also found:

> Plaintiff failed to meet its burden of proof in proving by a preponderance of the evidence that any claimed damages for property damage repairs were reasonable and necessary.

8

Plaintiff failed to meet its burden of proof in proving by a preponderance of the evidence its claimed damages.[2]

Consistent with the district court's findings, the record shows that, although the roofs installed by Storcorp were defective and the cause of water damage to the units bought by Buttross, there is no evidence that any damage to Buttross was proximately caused by Storcorp. The evidence shows that the seller expressly disclosed to Buttross that the roofs were defective and would need to be replaced entirely and that water had penetrated the units. Because Buttross bought the units "as is," we assume—and the evidence shows that—the purchase price accounted for these defects.[3] Given that the units were in a damaged condition when purchased—a damaged condition that was fully disclosed—Buttross would have had to present evidence showing that damages it incurred after the purchase were above an beyond the damages about which it was already aware. This it has not done and, indeed, it is difficult to see how it could be done.

The disclosure, along with three engineering reports, showed that the roofs on all four buildings had been leaking and had been replaced but that the replacement roofs had also failed and would have to be completely replaced. One of the engineering reports stated that the roof was "beyond salvage or repair and must be removed as soon as possible to mitigate additional water damage to the buildings." Knowing that the roofs were defective and needed to be completely replaced, Buttross accepted the risk that, given the right conditions, the roofs, or portions of the roofs, could fail completely, causing additional water damage.

---

[2] Although these findings are styled "conclusions of law," the designation is not controlling, and we may treat them as findings of fact. *Ray v. Farmers' State Bank*, 576 S.W.2d 607, 608 n.1 (Tex. 1979); *see El Chico Corp. v. Poole*, 732 S.W.2d 306, 313-14 (Tex.1987) (determination of proximate cause is generally a question of fact); *Tarrant Reg'l Water Dist. v. Gragg*, 43 S.W.3d 609, 625 (Tex. App.—Waco 2001) (amount of damages is question of fact for jury), *aff'd*, 151 S.W.3d 546 (Tex. 2004).

[3] Buttross, likewise, neither obtained nor purchased an assignment of any claim that the seller might have had against Storcorp or prior owners.

9

Despite this evidence, Buttross relies on *Kraft v. Langford*, 565 S.W.2d 223, 227 (Tex. 1978), arguing that the seller's disclosure is irrelevant, as the damages Buttross claims are for permanent damages, not temporary damages. *Kraft* applies the temporary/permanent distinction, initially established to determine when a nuisance claim accrues, to determine the appropriate measure of property damage caused by flooding. *Id.*; *see Schneider Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264, 270 (Tex. 2004). As explained in *Kraft*, the temporary/permanent damage distinction is used to determine whether the appropriate measure of property damage is repair cost and lost rent (temporary) or lost market value (permanent). 565 S.W.2d at 227. But, even assuming that *Kraft* applies here,[4] Buttross cannot claim that its damages were temporary in nature, and, therefore, that it should continue to accrue damages for repair costs or lost rent, when it elected to recover damages based on lost market value by purchasing the units for a reduced price based on damage to the roof. As noted, there was evidence, in the form of David Buttross's own testimony, that Buttross paid what it thought was a fair price, given its full knowledge of the condition of the roof and the risk it was taking. Buttross was—in this manner—already compensated for any later damages that might result.

Based on our review of the record, we conclude that Buttross cannot meet its burden of showing either that the evidence conclusively establishes that it sustained any damages proximately caused by Storcorp or that the district court's findings were so against the great weight and preponderance of the

---

[4] In *Schneider National Carriers, Inc. v. Bates*, the Supreme Court explained that applying the temporary/permanent distinction to designate the appropriate measure of property damage as either cost of repair and lost rent (temporary) or lost market value (permanent) "results from conflating general property damage cases with nuisances, and would be better served by addressing directly which measure of property damage is reasonable, as the temporary/permanent test 'is a relatively crude one, and it may be misleading.'" 147 S.W.3d 264, 270 n.12 (Tex. 2004) (quoting 1 Dan B. Dobbs, Dobbs Law of Remedies: Damages-Equity-Restitution § 5.2(2), at 716-18 (2d ed. 1993).

10

evidence that they are clearly wrong and unjust. *See Francis*, 46 S.W.3d at 241. Accordingly, we overrule Buttross's second issue.

## CONCLUSION

Having overruled each of Buttross's issues, we affirm the district court's judgment.

_____

Bob Pemberton, Justice

Before Chief Justice Jones, Justices Pemberton and Waldrop

Affirmed

Filed: August 18, 2010