# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00510-CV

**Noah S. Bunker; Paul Carrell; Everett Brew Houston, Jr.; W. Andrew Buckholz; Scott J. Leighty; Jad L. Davis; and Holly Clause, Appellants**

**v.**

**Tracy D. Strandhagen, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT NO. D-1-GN-13-002811, HONORABLE ORLINDA NARANJO, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This is an appeal from a declaratory summary judgment in favor of appellee Tracy Strandhagen, a physician who was formerly employed with American Anesthesiology of Texas, Inc. ("AAT"). Strandhagen sought a declaration that a liquidated-damages provision in a contract she entered into with other physicians working for AAT was an unenforceable penalty. Appellants, the physicians employed by AAT who comprise the practice group's advisory board ("board members"), challenged the ripeness of Strandhagen's claim in a plea to the jurisdiction, which the trial court denied. Strandhagen moved for summary judgment on the unenforceability of the provision, which the trial court granted. The board members appeal from the trial court's summary judgment and challenge the trial court's order denying their plea to the jurisdiction. We will reverse the summary judgment and remand.

BACKGROUND

**I.** **The parties executed certain contracts pursuant to the sale of their medical-practice group to AAT, including the contract at issue**

Strandhagen and approximately sixty other physicians, including the board members, were partners in Austin Anesthesiology Group ("AAG"). In 2011, those physicians sold their interests in AAG to AAT under a Membership Purchase Agreement ("purchase agreement"). In connection with that transaction, Strandhagen and the other physicians separately entered into individual employment agreements with AAT in which the physicians agreed to work for AAT. The physicians also entered into an internal-operating agreement among themselves ("operating agreement") that, among other things, created an advisory board tasked with certain responsibilities within the practice group. AAT was not a party to the operating agreement.

Strandhagen's employment agreement with AAT ("employment agreement") specified the terms of her employment with AAT and provided for a seven-year term of employment. The physicians' operating agreement specified the terms of operation among the physicians employed by AAT. It included a liquidated-damages provision in the event that a physician's employment was terminated before the expiration of his or her employment term:

> [I]f a Physician's employment with the Company is terminated for any reason during the Initial Term of a terminating Physician's Employment Agreement other than termination without cause by the company . . . then such a terminating physician . . . shall promptly pay to the non-terminating Physicians . . . as liquidated damages, and not as a penalty, the amount set forth below . . . .[1]

---

[1] The operating agreement indicated that the "Initial Term" was the term stated in the employment agreement, which for Strandhagen was seven years.

2

The amount of damages applicable to the majority of the physicians, including Strandhagen, was $500,000, which would be owed, not to AAT, but to the other physician signatories to the operating agreement. As Strandhagen observed in her first amended petition, each non-terminating physician would receive just under $10,000 in the event of breach. It is undisputed that Strandhagen's employment was terminated five years before her seven-year employment term ended, though the parties dispute whether she was terminated "without cause" by AAT under the operating agreement.

## II. Strandhagen sought a declaratory judgment that the liquidated-damages provision is unenforceable

Strandhagen initiated a declaratory-judgment action against the board members seeking a declaration that the liquidated-damages provision was unenforceable against her because (1) she was terminated "without cause" under the operating agreement and (2) the provision constituted an unenforceable penalty as a matter of law. The board members filed a plea to the jurisdiction challenging the sufficiency of the evidence showing the existence of a justiciable controversy between the parties. They claimed that she was required to prove that litigation between the parties was imminent and that she had produced no evidence that they intended to seek enforcement of the liquidated-damages provision against her.

In response, Strandhagen alleged that she had learned that the board members had begun soliciting the support of the signatories to the operating agreement to file suit against her. She also produced uncontested evidence establishing that (1) her employment had terminated before the end of the employment term under her employment agreement and (2) AAT had advised her that it

3

had terminated her employment "with cause" pursuant to her employment agreement,[2] facts that the board members do not dispute. The trial court denied that portion of the board members' plea.[3]

Strandhagen then moved for summary judgment declaring that the liquidated-damages provision was an unenforceable penalty, which the trial court granted. In two issues, the board members appeal the denial of their plea to the jurisdiction and the granting of Strandhagen's motion for summary judgment.

## STANDARD OF REVIEW

### I.    Summary judgment

We review a trial court's summary-judgment rulings de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). We take as true all evidence favorable to the non-movant and indulge every reasonable inference in the non-movant's favor. *Id.* The party moving for summary judgment must demonstrate that no material fact issue exists and that she is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000). To prevail on summary judgment, the moving party must establish each element of her claim as a matter of law or negate an element of the respondent's

---

[2] Strandhagen's employment agreement defined termination for "cause," but the operating agreement did not expressly incorporate that definition or provide any definition of termination "without cause" as used in the operating agreement.

[3] The board members' plea also challenged the court's jurisdiction over Strandhagen's claim that she had been terminated without cause due to gender discrimination because she had filed a gender-discrimination claim with the Texas Workforce Commission and so, they contended, she had not yet exhausted her administrative remedies. The trial court granted the plea on that ground and dismissed that claim, which Strandhagen has not appealed.

claim or defense as a matter of law. *See M.D. Anderson*, 28 S.W.3d at *23*; *C.W. 100 Louis Henna, Ltd. v. El Chico Rests. of Tex., L.P.*, 295 S.W.3d 748, 753 (Tex. App.—Austin 2009, no pet.).

## II.     Plea to the jurisdiction

A plea to the jurisdiction may challenge the plaintiff's pleading or the existence of the jurisdictional facts alleged in the pleading. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). When the defendant challenges the latter, as here, the defendant must meet the summary-judgment standard of proof. *Id.* at 227-28. Under that standard, the defendant must present conclusive proof regarding a jurisdictional fact. *See id.*; *see also Just Energy Tex. I Corp. v. Texas Workforce Comm'n*, 472 S.W.3d 437, 440 (Tex. App.—Dallas 2015, no pet.). If the defendant meets that burden, the plaintiff must present evidence showing a disputed issue of material fact regarding the jurisdictional issue. *Miranda*, 133 S.W.3d at 228; *Just Energy*, 472 S.W.3d at 440. If the defendant fails to present conclusive proof of a fact negating jurisdiction, the plaintiff has no burden to present evidence on the jurisdictional issue. *Just Energy*, 472 S.W.3d at 440. If the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law, which is subject to de novo review. *Miranda*, 133 S.W.3d at 228.

## DISCUSSION

## I.     Strandhagen's claim is ripe for review

In their second issue, the board members challenge the trial court's denial of their plea to the jurisdiction. They contend that the enforceability of the liquidated-damages provision is not ripe for review because the record does not demonstrate a justiciable controversy. We disagree.

5

## A. Ripeness in declaratory-judgment actions

The UDJA provides that "[a] person interested under a . . . written contract . . . may have determined any question of construction or validity arising under the . . . contract . . . and obtain a declaration of rights, status, or other legal relations thereunder." Tex. Civ. Prac. & Rem. Code § 37.004. In a declaratory-judgment action, a claim is ripe if, at the time the plaintiff files a petition for declaratory relief, the plaintiff has incurred or caused[4] injury, or injury is likely to occur. *Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 851-52 (Tex. 2000) (citing *Patterson v. Planned Parenthood of Hous. & Se. Tex.*, *Inc.*, 971 S.W.2d 439, 442 (Tex. 1998)). A claim is not ripe if it is based on hypothetical or contingent facts that may not occur as anticipated or may not occur at all. *Id.* at 852. "[A] matured breach [of contract] is explicitly covered by the [Declaratory Judgments] Act." *MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 667 (Tex. 2009) (citing Tex. Civ. Prac. & Rem. Code § 37.004(b)); *see also* 26 C.J.S. Declaratory Judgments § 28 ("A controversy is ripe if the facts on which a legal decision is demanded have accrued.").

## B. The record demonstrates a justiciable controversy

Here, the evidence is undisputed, thus review of the trial court's ruling is de novo. *See Miranda*, 133 S.W.3d at 228. The record contains evidence demonstrating the contentious

---

[4] This Court has explained that "[i]t is not necessary that a person who seeks a declaration of rights under this statute shall have incurred or caused damage or injury in a dispute over rights and liabilities," *Texas Dep't of Pub. Safety v. Moore*, 985 S.W.2d 149, 153 (Tex. App.—Austin 1998, no pet.) (internal quotation marks omitted), though certainly a party who has incurred *or* caused injury may seek a declaration of contractual rights once the injury has occurred. Indeed, the UDJA states that any person interested in a contract may seek a declaration regarding rights under the contract and contains no language limiting invocation of that remedy to persons who have incurred injury or excluding from that remedy persons who have caused injury. *See* Tex. Civ. Prac. & Rem. Code § 37.004(b).

6

circumstances surrounding Strandhagen's early termination. The parties do not dispute that (1) Strandhagen's employment had terminated before the expiration of her employment term as defined under the employment agreement and (2) AAT had taken the position that it had terminated her for cause. Those facts gave rise to a cause of action in favor of the board members against Strandhagen for breach of the operating agreement and thus rendered ripe the issue of enforceability of the liquidated-damages provision contained in that agreement. *See MBM Fin. Corp.*, 292 S.W.3d at 667-68 (parties may seek declaration of rights under contract after matured breach) (citing Tex. Civ. Prac. & Rem. Code § 37.004(b)); *Gibson*, 22 S.W.3d at 851-52 (injury must have occurred or be likely to occur at time UDJA action filed).

The board members, however, cite cases suggesting that a showing of imminent litigation is a prerequisite to jurisdiction. *See Paulsen v. Texas Equal Access to Justice Found.*, 23 S.W.3d 42, 46 (Tex. App.—Austin 1999, pet. denied); *Texas Dep't of Pub. Safety v. Moore*, 985 S.W.2d 149, 153-54 (Tex. App.—Austin 1998, no pet.). But in those cases, the plaintiff was required to show at least "ripening seeds of a controversy"—such as the threat of imminent litigation upon injury—because an injury *had not yet occurred*.[5] *Paulsen*, 23 S.W.3d at 46-47 (no justiciable controversy where no evidence of actual breach *or* threat of litigation); *Moore*, 985 S.W.2d at 154 (when record does not demonstrate fully ripened cause of action, justiciable controversy may be

---

[5] In support of an imminent-litigation standard, the board members also cite *State v. Margolis*, 439 S.W.2d 695, 699 (Tex. Civ. App.—Austin 1969, writ ref'd n.r.e.), and *LHR Enters., Inc. v. Geeslin*, No. 03-05-00176-CV, 2007 WL 3306492, at *1 (Tex. App.—Austin Nov. 7, 2007, pet. denied) (mem. op.). But those cases involved declarations of whether conduct violated statutes, whereas the law plainly permits a declaratory-judgment action arising from a matured breach of contract. *MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 667-68 (Tex. 2009).

7

shown by evidence of threatened imminent litigation).[6] Because the record in this case shows that the facts giving rise to a cause of action for breach of the operating agreement had occurred and were not remote or contingent, Strandhagen was permitted to seek a declaration of her rights and duties under that agreement.[7] *See* Tex. Civ. Prac. Rem. Code § 37.004 (party to contract "may have determined any question of construction or validity arising under the . . . contract"); *see also MBM Fin. Corp.*, 292 S.W.3d at 667-68; *Gibson*, 22 S.W.3d at 851-52.

The board members further contend that the trial court lacked jurisdiction to hear Strandhagen's claim—that the liquidated-damages provision was unenforceable because it constituted a penalty—because an assertion of penalty is an affirmative defense, and, they argue, affirmative defenses may not be adjudicated in declaratory-judgment actions. In support, they cite *Transcontinental Realty Investors, Inc. v. Orix Capital Markets, LLC*, 353 S.W.3d 241 (Tex.

---

[6] *See also Zeppa v. Sharp*, No. 03-98-00119-CV, 1998 WL 849411, at *3-4 (Tex. App.—Austin Dec. 10, 1998, pet. denied) (not designated for publication) (noting that statute of limitations begins to run when cause of action accrues and rejecting argument that, once cause of action accrues, a UDJA plaintiff must also show that litigation is imminent); *Transportation Ins. Co. v. WH Cleaners, Inc.*, 372 S.W.3d 223, 231 (Tex. App.—Dallas 2012, no pet.) (declining to "make the existence of a justiciable controversy dependent on the subjective state of mind and intention of one party" where non-moving party stated that it did not intend to contest moving party's denial of contract benefits but evidence showed accrual of cause of action); *Zinpro Corp. v. Ridenour*, No. 07-96-0008-CV, 1996 WL 438850, at *3 (Tex. App.—Amarillo Aug. 1, 1996, no writ) (not designated for publication) ("Although we have previously held that the justiciability of a controversy *can be* shown by the imminence of litigation, that holding does not compel the contrary conclusion that failure to show litigation is imminent establishes non-justiciability.").

[7] Because the record in this case establishes the existence of an actual controversy, we need not reach the question of whether the record shows that litigation was imminent. Furthermore, even if a showing of imminent litigation was an evidentiary requirement here, the board members would have had the initial burden to prove that litigation was not imminent, which they did not do, before the burden would have shifted to Strandhagen to demonstrate that it was. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004); *Just Energy Tex. I Corp. v. Texas Workforce Comm'n*, 472 S.W.3d 437, 440 (Tex. App.—Dallas 2015, no pet.).

8

App.—Dallas 2011, pet. denied). In that case, Orix sought a declaratory judgment that no defenses could exist to its potential indemnity claim against Transcontinental for attorney's fees it sought to collect against a third party, a Transcontinental subsidiary. *Id.* at 242. The viability of Orix's potential indemnity claim, however, was entirely dependent upon a different court's determination regarding the subsidiary's liability in a different proceeding that was pending when Orix filed its UDJA action. *Id.* at 244-45. Specifically, a determination by the other court that the subsidiary was not liable would have entirely mooted the issue of Transcontinental's liability in the UDJA action. *Id.* In holding that the trial court lacked jurisdiction over Orix's UDJA action, the *Transcontinental* court explained that justiciability would have existed in that case only if all the relevant facts and defenses were sufficiently developed such that Transcontinental's liability "could not have been affect by subsequent events." *Id.* at 245. The court concluded that no justiciable controversy existed because events necessary to trigger Transcontinental's potential liability—i.e., a different court's determination that the subsidiary was liable and assessment of attorney's fees, and the subsidiary's refusal to pay those fees—had not yet occurred and were contingent, thus any opinion as to potential defenses Transcontinental might raise to an indemnity claim "would be completely advisory." *Id.*

The present case is distinguishable from *Transcontinental*. First, unlike the issue of liability in *Transcontinental*, the issue of the enforceability of the liquidated-damages provision against Strandhagen under the operating agreement was not pending before another court and would not be mooted by any action in a then-pending proceeding. *Cf. Transcontinental*, 353 S.W.3d at 244-45. It is well established that the UDJA is not available to settle disputes already pending before a court in which the issues involved in the declaratory action may be adjudicated. *BHP Petroleum*

*Co. v. Millard*, 800 S.W.2d 838, 841 (Tex. 1990); *Howell v. Mauzy*, 899 S.W.2d 690, 706 (Tex. App.—Austin 1994, pet. denied). But because the issue as to which Strandhagen sought a declaration was not pending in a different court when she filed her UDJA suit, the trial court was not precluded from hearing it. *Cf. Calderon v. Ashmus*, 523 U.S. 740, 747-48 (1998) (holding federal court lacked jurisdiction to adjudicate validity of defense to habeas action when petitioner had not demonstrated that he had exhausted state remedies, a prerequisite to federal-court jurisdiction over habeas claim); *cf. United Services Life Ins. Co. v. Delaney*, 396 S.W.2d 855, 863-64 (Tex. 1965) (holding state court lacked jurisdiction to hear UDJA suit where federal court stayed federal proceeding to permit parties to seek declaratory judgment in state court that would not be final and binding in federal-court proceeding).

Second, the justiciability of whether the liquidated-damages provision is unenforceable against Strandhagen because it constituted a penalty, unlike the question of Transcontinental's liability, was not contingent upon uncertain future events at the time Strandhagen filed her UDJA suit. *Cf. Transcontinental*, 353 S.W.3d at 245. Rather, as previously discussed, the relevant facts establishing the justiciability of that question were sufficiently developed and would not be affected or negated by subsequent events.[8] *Cf. id.* The fact that another defense to enforcement of the liquidated-damages provision—i.e., that Strandhagen was terminated without

---

[8] Again, those facts were that Strandhagen's employment ended before the expiration of her employment term under her employment agreement and that AAT had taken the position that she had been terminated with cause, which, pursuant to the language of the operating agreement, permitted the board members to seek enforcement of the liquidated-damages provision against Strandhagen.

10

cause—had not been decided and was not before the trial court in the proceedings below[9] did not deprive the court of jurisdiction to adjudicate a different defense to enforcement of that provision—i.e., that the provision constituted a penalty.

Furthermore, the possibility that an adjudication of Strandhagen's penalty claim would not resolve the entire controversy—such as issues of Strandhagen's liability, if any, resulting from early termination and any actual damages—would not deprive the trial court of jurisdiction to decide her claim. The UDJA states that a court "has power to declare rights . . . whether or not further relief is or could be claimed." Tex. Civ. Prac. & Rem. Code § 37.003(a). It further contemplates actions in which a judgment "will terminate the controversy *or remove an uncertainty*." *Id.* § 37.003(c) (emphasis added). Accordingly, the supreme court has observed that "[a] trial court has discretion to enter a declaratory judgment *so long as it will serve a useful purpose or* will terminate the controversy between the parties." *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 468 (Tex. 1995) (emphasis added). We cannot conclude, nor do the board members contend on appeal, that the record in this case demonstrates that the trial court abused its discretion in determining that a judgment regarding the enforceability of the liquidated-damages provision would "remove an

---

[9] While we recognize that an adjudication that she was terminated "without cause" as defined under the operating agreement could obviate the question of whether the liquidated-damages provision is unenforceable against her as a penalty, as previously mentioned, the trial court granted the board members' plea to the jurisdiction regarding her request for a declaratory judgment as to that issue. Because Strandhagen has not appealed from that order, we do not comment on its propriety and instead note only that (1) the issue of whether she was terminated "without cause" under the operating agreement was not before the trial court in the proceeding below, and (2) nothing in the record demonstrates—and neither party argues on appeal—that that issue was pending in a different proceeding that could have mooted Strandhagen's penalty claim in the present proceeding.

11

uncertainty" and "serve a useful purpose" in resolving the present dispute. *See* Tex. Civ. Prac. & Rem. Code § 37.003(a); *Beadle*, 907 S.W.2d at 468.

Finally, the board members argue that Strandhagen's penalty claim was not ripe because the parties had no ongoing relationship, citing *Nexstar Broadcasting, Inc. v. Gray*, No. 09-07-364 CV, 2008 WL 2521967, at *2 (Tex. App.—Beaumont June 26, 2008, no pet.) (mem. op.). But the Supreme Court has since expressly rejected any such requirement. *See MBM Fin. Corp.*, 292 S.W.3d at 667-68 ("We disagree that a party can immunize itself against declaratory relief by simply terminating any ongoing relationship.").

Because the record demonstrates a justiciable controversy, we overrule the board members' second issue.

## II. Strandhagen did not demonstrate that the liquidated-damages provision is an unenforceable penalty as a matter of law

In their first issue, the board members contend that the trial court erred in granting summary judgment in favor of Strandhagen because she failed to conclusively prove that the liquidated-damages provision constituted an unenforceable penalty.

### A. Enforceability of liquidated damages

"Liquidated damages" is a measure of damages that parties agree in advance will be assessed in the event of a contract breach. *Flores v. Millennium Interests, Ltd.*, 185 S.W.3d 427, 431 (Tex. 2005). However, because the basic principle underlying contract damages is compensation for losses sustained due to breach and no more, courts may not enforce punitive contractual damages

12

provisions. *FPL Energy, LLC v. TXU Portfolio Mgmt. Co.*, 426 S.W.3d 59, 69 (Tex. 2014) (citing *Stewart v. Basey*, 245 S.W.2d 484, 486 (Tex. 1952)); *Phillips v. Phillips*, 820 S.W.2d 785, 789 (Tex. 1991) ("Enforcement of an illegal agreement violates public policy."). A liquidated-damages provision is unenforceable if it is actually a penalty for noncompliance rather than "just compensation" for loss, which is a question of law. *Phillips*, 820 S.W.2d at 788. Sometimes, however, factual issues must be resolved before the legal question can be decided. *Id.*

A liquidated-damages provision will be enforced if the court finds that (1) the harm caused by the breach is impossible or difficult to estimate and (2) the amount of liquidated damages is a reasonable forecast of just compensation. *Id.*; *FPL Energy*, 426 S.W.3d at 69. Both findings are "indispensable," thus if either element is lacking, the provision is unenforceable. *FPL Energy*, 426 S.W.3d at 69. The party asserting a penalty defense bears the burden of proof. *Phillips*, 820 S.W.2d at 789.

Strandhagen concedes the first element, namely, that the harm caused by early termination was difficult to estimate at the time of contracting. The board members contend that her claim fails because she was required to show *both* that the harm caused by a breach could be estimated at the time of contract *and* that the amount of liquidated damages was an unreasonable forecast of just compensation. But because a liquidated-damages provision is unenforceable if either element is lacking, a party may show that a provision is a penalty by negating either element. *See FPL Energy*, 426 S.W.3d at 69; *Arthur's Garage, Inc. v. Racal–Chubb Sec. Sys., Inc.*, 997 S.W.2d 803, 810 (Tex. App.—Dallas 1999, no pet.) (citing *Phillips*, 820 S.W.2d at 788). To prevail on her

13

penalty defense, she need have shown only that the provision is an unreasonable forecast of just compensation. Strandhagen's concession thus is not determinative of the issue.

**B.      The record does not conclusively demonstrate that the liquidated-damages provision is a penalty as an unreasonable forecast of just compensation**

> *1.  Proof of actual damages is not required if a liquidated-damages provision is unreasonable on the face of a contract*

The board members first argue that a party claiming that a provision is an unreasonable forecast of just compensation must prove that the liquidated damages were disproportionate to actual damages, citing, *e.g., Phillips*, 820 S.W.2d at 785. They argue that, because Strandhagen introduced no evidence of actual damages, the trial court erred in granting her motion for summary judgment.[10] The *Phillips* court explained that "sometimes . . . factual issues must be resolved before the legal question [of whether a provision is a penalty] can be decided," such as when a party intends to show that the provision is unreasonable in light of actual damages, which would require proof of the actual damages. *Id.* at 788. However, that language does not suggest that proof of actual damages is required for every claim of unreasonableness; rather, when a party has challenged a provision on that basis must the party prove actual damages. *See id.*; *see also FPL Energy*, 426 S.W.3d at 70 (explaining that a provision "may be unreasonable" in light of actual damages); *Garden Ridge, L.P. v. Advance Int'l, Inc.*, 403 S.W.3d 432, 438 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (noting that "one way a party can 'show that a liquidated-damages

---

[10] The only evidence supplied by Strandhagen in support of her motion for summary judgment was the employment agreement, the operating agreement, and a sworn statement by Strandhagen briefly stating the background facts. Although Strandhagen did not attach the employment agreement to her motion for summary judgment, she filed it with the court under seal and incorporated it by reference in her motion.

provision is unreasonable' is by showing that the actual damages incurred were much less" than amount forecast) (quoting *Phillips*, 820 S.W.2d at 788).

Accordingly, a provision may be shown in certain circumstances to be unreasonable on the face of the contract without proof of actual damages.[11] In *Phillips*, for example, the liquidated-damages provision called for a multiplier of actual damages. *Phillips*, 820 S.W.2d at 789. The court concluded that such a provision could not possibly be a reasonable forecast of actual damages, thus no extrinsic evidence was required to establish that it was an unenforceable penalty. *Id.* That standard is consistent with the requirement that courts review reasonableness from the perspective of the parties at the time of contracting. *FPL Energy*, 426 S.W.3d at 69-70.

Other facially unreasonable liquidated-damages provisions are those that apply the same measure of damages for breaches of plainly varying magnitude, which the parties describe as "one size fits all" provisions. *See Stewart*, 245 S.W.2d at 485-86 (provision unenforceable because assessed same damages for major and minor breaches).[12] In those cases, that the alleged breach is material does not save a "one size fits all" provision that would assess disproportionate damages for relatively minor breaches. *Id.* (courts cannot view any one covenant in isolation but must consider

---

[11] One court has distinguished these as the "anticipated harm" and "actual harm" tests. *Baker v. International Record Syndicate, Inc.*, 812 S.W.2d 53, 55 (Tex. App.—Dallas 1991, no writ); *see also Garden Ridge, L.P. v. Advance Int'l, Inc.*, 403 S.W.3d 432, 439-40 (Tex. App.—Houston [14th Dist.] 2013, pet. denied).

[12] *See also Community Dev. Serv., Inc. v. Replacement Parts Mfg., Inc.* 679 S.W.2d 721, 725 (Tex. App.—Houston [1st Dist.] 1984, no writ); *Bethel v. Butler Drilling Co.*, 635 S.W.2d 834, 837-38 (Tex. Civ. App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.); *Krenek v. Wang Labs., Inc.*, 583 S.W.2d 454, 457 (Tex. Civ. App.—Waco 1979, no writ); *Mayfield v. Hicks*, 575 S.W.2d 571, 576 (Tex. Civ. App.—Dallas 1978, writ ref'd n.r.e.); *Servisco v. Tramaco, Inc.*, 568 S.W.2d 434, 437 (Tex. Civ. App.—Texarkana 1978, writ ref'd n.r.e.).

15

reasonableness of provision in light of entire contract to determine whether it is "carefully drawn").[13]

When it is plain from the face of a contract that a provision may operate as a penalty instead of a

reasonable forecast of loss, no extrinsic evidence of unreasonableness is required.[14]

### *2. Strandhagen failed to conclusively prove that the liquidated-damages provision is an unenforceable "one size fits all" provision*

The board members next contend that the liquidated-damages provision is not a

penalty on the face of the operating agreement because, unlike the above-cited cases, it is not a "one

size fits all" provision. Rather, application of the liquidated-damages provision is triggered by only

one type of breach, i.e., early termination of employment with cause.

Strandhagen responds that it is a "one size fits all" provision because it imposes a fixed

amount of damages regardless of when the breach occurs within the contract term; for example, the

provision would assess damages of $500,000 regardless of whether the breach occurs with several

---

[13] *See also Bethel*, 635 S.W.2d at 838 (courts may not "pick and choose which breaches are enforceable by liquidated damages" when provision is applicable to breaches of varying materiality); *Mayfield*, 575 S.W.2d at 575 (that actual breach was substantial "does not save the provision from being a penalty because that question turns on whether the provision provides for reasonable compensation" for even insignificant breaches).

[14] The other cases the board members cite upholding liquidated-damages provisions because the challenging party did not prove that the provision was unreasonable in light of actual damages either did not involve claims of facial unreasonableness or rejected those claims on the merits. *See, e.g.*, *Triton 88, L.P. v. Star Elec., L.L.C.*, 411 S.W.3d 42, 62 (Tex. App.—Houston [1st Dist.] 2013, no pet.); *GPA Holding, Inc. v. Baylor Health Care Sys.*, 344 S.W.3d 467, 476 (Tex. App.—Dallas 2011, pet. denied); *Urban Television Network Corp. v. Creditor Liquidity Sols., L.P.*, 277 S.W.3d 917, 919 (Tex. App.—Dallas 2009, no pet.); *Chan v. Montebello Dev. Co.*, No. 14-06-00936-CV, 2008 WL 2986379, *4 (Tex. App.—Houston [14th Dist.] July 31, 2008, pet. denied) (mem. op.); *Southern Union Co. v. CSG Sys., Inc.*, No. 03-04-00172-CV, 2005 WL 171349, *6 (Tex. App.—Austin Jan. 27, 2005, no pet.) (mem. op.); *Healix Infusion Therapy, Inc. v. Bellos*, No. 11-02-00346-CV, 2003 WL 22411873, at *2 (Tex. App.—Eastland Oct. 23, 2003, no pet.) (mem. op.).

years remaining on the contract or just one day. She argues that, given the types of harm that the board members claim they would suffer from breach (which are also cited in the operating agreement)—such as increased workloads; impairment of their relationships with third parties; costs related to securing a replacement physician; and impairment of their profit-making and bonus-earning capabilities—would necessarily be greater the more time that remained on the contract at the time of breach. She contends that those types of harm would accrue over time, so a breach earlier in the contract term would necessarily be more harmful than a breach toward the end of the contract term.

We disagree with Strandhagen that it is clear from the face of the operating agreement that the timing of the breach would necessarily affect the materiality of the breach. The operating agreement provides no information that would compel the conclusion that the harm the non-terminating physicians would suffer if Strandhagen's employment was terminated with one day left in her employment term would be materially less than the harm they would suffer if her employment was terminated with several years left in the term. Although the operating agreement cites certain types of harm the physicians may suffer in the event of breach, it is impossible to determine without extrinsic evidence that such harm would necessarily be greater the earlier in the employment term termination occurred. Specifically, the operating agreement contains representations by its signatories, including Strandhagen, that

> [e]ach physician understands and agrees that (i) in addition to the consideration under the Purchase Agreement, beginning on January 1, 2013, the Physicians are eligible for certain bonuses under the Company's Physician Performance Incentive Program based upon the profits of the Company, (ii) he or she has entered into an Employment Agreement with the Company to perform certain services for the Company for an

17

initial term as set forth in his or her or her Employment Agreement (the "Initial Term") and (iii) if he or she terminates his or her employment with the Company prior to the expiration of the Initial Term, the Physicians may suffer harm, including, without limitation, increased workloads necessitated by such termination, material impairment of the ability of the Physicians to earn bonuses under the Company's Physician Performance Incentive Program, material impairment of the Physicians' relationships with hospitals and other health-care facilities, third-party payors and other stakeholders, and hiring and training costs related to replacement physicians.

The face of the operating agreement contains nothing that conclusively demonstrates that a breach earlier in the employment term would be more harmful to the physicians than a breach later in the employment term.

Furthermore, the above-cited list of potential damages does not purport to be an exclusive list. The other physician signatories may suffer harm beyond the types contemplated in the operating agreement, especially in light of AAT's purchase of the practice group. The purchase agreement between the physicians and AAT, which is referenced in the operating agreement but is not part of the record, may indeed show that a breach later in the employment term would inflict greater harm upon the non-terminating physicians than a breach earlier in the term. There simply is not enough information in the record to conclusively determine that the timing of termination would affect the damages to which the non-terminating physicians would be entitled.

Another fact that undermines the "one size fits all" argument is that the operating agreement identifies numerous exceptions in which the liquidated-damages provision would not apply. Those exceptions are set forth in paragraph 5(c) of the operating agreement and include the following:

(1) the death of a physician;

(2) a physician suffers a permanent disability;

18

(3) termination due to downsizing or material decline in the practice's profitability;

(4) the company's contract with St. David's Healthcare Partnership is terminated;

(5) a qualifying termination as defined in the employment agreement; and

(6) termination resulting from a conflict of interest.

The operating agreement further permits a physician to petition the advisory board for an exception to enforcement of the liquidated-damages provision in the event of "unforeseen conditions [that] may a during the Initial Term that may prompt a Physician to terminate his or her employment with the Company." Consequently, the liquidated-damages provision would apply only in the event of early termination and only under limited circumstances of termination. Those exceptions indicate that the liquidated-damages provision was narrowly drafted and would not be triggered by immaterial breaches.

We also agree with the board members' argument that the liquidated-damages provision is unlike the "one size fits all" provisions struck down in other cases that imposed a fixed amount of liquidated damages for violations of both major and minor covenants. In *Stewart v. Basey*, for example, the lease imposed as liquidated damages $150 per month for the remainder of the unexpired term for any breach of the contract, regardless of whether the breach was major (such as failure to pay rent) or minor (such as failure to "prudently use the premises"), thus the supreme court held that the provision was "not carefully drawn." 245 S.W.2d at 487.[15] The court

---

[15] *See also Community Dev. Serv.*, 679 S.W.2d at 727 (same damages for "any default," such as failure to pay taxes and interest or failure to keep trash off the property); *Krenek*, 583 S.W.2d at 457 (same damages for failure to pay rent as failure to adhere to labeling requirements); *Servisco*, 568 S.W.2d at 437 (failure to pay rent and failure to pay nominal charges); *Mayfield*, 575 S.W.2d at 575 (failure to pay equipment rentals and failure to keep rentals in good appearance).

concluded that the damages that would result from a breach of a minor covenant could not possibly approximate those that would result from a breach of a major one. *Id.* Here, by contrast, the provision is triggered by the violation of only one covenant, the length of the employment term. And, as discussed, it is not apparent from the face of the operating agreement that the timing of early termination would decrease the amount of damages that would result from that breach. Further, the various exceptions that the agreement carves out to application of the liquidated-damages provision reveal that the operating agreement, unlike the lease agreement in *Stewart*, was "carefully drawn" to be a genuine forecast of just compensation in the event of breach. *Cf. id.*

Finally, the signatories to the operating agreement expressly acknowledged the terms of the agreement, agreed to be bound by all of its covenants, and stipulated that the liquidated-damages provision is not a penalty but a reasonable estimation of compensation. For example, an opening recital states that "a significant inducement to Physicians' entering into the Purchase Agreement . . . is the Physicians' agreement to be bound by the covenants set forth herein, which covenants are narrowly tailored and necessary to protect the Physicians' legitimate interests as a group." The liquidated-damages provision itself plainly states that the provision provided an amount that would be shared by the non-terminating physicians "as liquidated damages, and not as a penalty . . . ." The agreement further states that parties agreed that the amount stipulated was reasonable:

> The Physicians each acknowledge and agree that the Liquidated Damages Amount is reasonable in light of the anticipated harm which would be caused by a Terminating Physician's breach of or default under this Agreement . . . and the value of the transactions to be consummated under the Purchase Agreement and other Transaction Documents.

This Court has observed that, "[a]though parties cannot avoid a challenge to a liquidated-damages provision simply by characterizing it as 'reasonable,' such express language is instructive of the parties' intent when the terms are mutually bargained for between equally competent parties." *Southern Union Co. v. CSG Sys., Inc.*, No. 03-04-00172-CV, 2005 WL 171349, at *6 (Tex. App.—Austin Jan. 27, 2005, no pet.) (mem. op.); *see also Chan v. Montebello Dev. Co.*, No. 14-06-00936-CV, 2008 WL 2986379, at *5 (Tex. App.—Houston [14th Dist.] July 31, 2008, pet. denied) (mem. op.) (noting that contract language stating that liquidated-damages provision was not a penalty reflected the parties' intent that the provision was not a penalty). We find that the parties' stipulation of reasonableness, while not determinative, is evidence of the parties' intent at the time of contracting.

In sum, Strandhagen has failed to conclusively demonstrate that the liquidated-damages provision constitutes a penalty on the face of the operating agreement. Based on the limited summary-judgment evidence alone, we cannot determine that the failure of the liquidated-damages provision to account for when the breach occurs within the employment term renders it a prohibited "one size fits all" provision as a matter of law. Consequently, the trial court erred in granting Strandhagen's motion for summary judgment on that basis. *See Phillips*, 820 S.W.2d at 788 (explaining that sometimes fact issues must be resolved before legal question of whether liquidated-damages provision is penalty can be resolved); *see also M.D. Anderson*, 28 S.W.3d at 23 (summary-judgment movant has burden to establish that no material fact issues exist and that she is entitled to summary judgment as matter of law). We therefore sustain the board members' first issue.

21

**C.**     **The record does not support Strandhagen's argument in her motion for summary judgment that the board members lack standing to enforce the liquidated-damages provision**

In her motion for summary judgment, Strandhagen also argued that the liquidated-damages provision is an unenforceable penalty because it purports to render her liable to the board members for a breach of the employment agreement (as opposed to the operating agreement containing the liquidated-damages provision). Because the board members are not parties or third-party beneficiaries to her employment agreement, she concluded, they would lack standing to enforce that agreement.[16] On appeal, the board members contend that argument did not provide a valid basis for summary judgment. We agree.

In her motion for summary judgment, Strandhagen cited *Resolution Trust Corp. v. Kemp*, 951 F.2d 657, 662 (5th Cir. 1992), for the proposition that only actual parties to a contract or intended third-party beneficiaries can claim the benefit of a contract.[17] Although it is undisputed that the board members are actual parties to the operating agreement, Strandhagen argued that, in seeking to enforce the liquidated-damages provision, the board members would actually be seeking

[16] The order granting summary judgment states that Strandhagen's "Motion for Summary Judgment is GRANTED, and the Court DECLARES that the $500,000 purported liquidated damages clause in the [operating agreement] is an unenforceable penalty." Although the order does not mention the standing issue, we may review that ground to determine whether it would have supported the grant of summary judgment in her favor. *See Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996) (holding that an "appellate court may consider other grounds that the movant preserved for review and trial court did not rule on in the interest of judicial economy"); *Del Indus., Inc. v. Texas Workers' Comp. Ins. Fund*, 973 S.W.2d 743, 748 (Tex. App.—Austin 1998), *aff'd*, 35 S.W.3d 591 (Tex. 2000) (addressing ground raised in motion for summary judgment despite trial court not considering it because reviewing courts "are obligated to dispose of as many claims as possible while a case is on appeal in order to promote judicial economy").

[17] Strandhagen did not respond to the board members' argument regarding this issue on appeal, so we are limited to her arguments on summary judgment.

to enforce her employment agreement with AAT. However, Strandhagen's liability for liquidated damages arises directly from the operating agreement, which contains the liquidated-damages provision, not Strandhagen's employment agreement with AAT. They are entirely separate contracts. The operating agreement was executed by the physicians in the practice group and was intended to govern the terms of operation of the group. Indeed, the liquidated-damages provision itself contemplates the types of harm that the *physicians* would suffer in the event of early termination, not AAT. It does not require the non-terminating physicians to claim a right or interest in a terminating physician's employment agreement in order to seek enforcement of that provision. Strandhagen provided no authority as to how the incorporation of the length of the employment term as specified in the employment agreement would preclude the non-terminating physicians from enforcing the terms of the operating agreement, and we have found no such supporting authority.

As parties to the operating agreement, the board members would have standing to seek enforcement of the liquidated-damages provision contained in that agreement. *See id.*; *see also First Citizens Bank & Trust Co. v. Greater Austin Area Telecomms. Network*, 318 S.W.3d 560, 566 (Tex. App.—Austin 2010, no pet.) (one way to establish standing is to prove that defendant was party to enforceable contract with plaintiff). Strandhagen's alternative argument thus does not support summary judgment in her favor.

## CONCLUSION

We reverse the summary judgment and remand the case to the district court for further proceedings.

_____
Cindy Olson Bourland, Justice

Before Justices Puryear, Goodwin, and Bourland

Reversed and Remanded

Filed:   March 3, 2017