**AFFIRMED and Opinion Filed July 14, 2023**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-22-00675-CV**

**DR. GREGORY MILLIGAN, M.D. AND CHELLSE GAZDA, M.D.,**
**Appellants**
**V.**
**AMBER MAYHEW, KEITH MAYHEW, AND SSF CONSULTING, LLC**
**D/B/A NANNY POPPINZ, Appellees**

**On Appeal from the 116th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-21-05362**

## MEMORANDUM OPINION

Before Justices Nowell, Goldstein, and Breedlove
Opinion by Justice Nowell

Dr. Gregory Milligan and Dr. Chellse Gazda sued Amber Mayhew, Keith Mayhew, and SSF Consulting, LLC d/b/a Nanny Poppinz for breach of contract and violations of the Deceptive Trade Practices Act (DTPA). Following a bench trial, the trial court entered findings of fact and conclusions of law and a take-nothing judgment against appellants.

Appellants raise two issues on appeal. They argue the trial court erred by not entering a default judgment against SSF Consulting, LLC d/b/a Nanny Poppinz

because it did not file a proper answer and did not appear at trial. In their second issue, appellants argue the trial court incorrectly interpreted the contract, and the evidence is legally and factually sufficient to establish their breach of contract and DTPA claims. We affirm the trial court's take-nothing judgment.

**Background**

Appellees own a nanny referral service called Nanny Poppinz. Nanny Poppinz's website advertised it "does not charge a fee of any kind until we provide you with the Nanny of your choice. Then and only then is payment due to Nanny Poppinz. So let us help you with your child care and we promise your satisfaction. Call us now."

Appellants contacted Nanny Poppinz about nanny services for their child. On October 4, 2020, appellees responded via email and included a welcome letter explaining their services and pricing. Appellants signed Nanny Poppinz's standard form contract promulgated by Nannies of America, Inc. (NAI), which included the following provision:

> Client shall pay Company the following upon Client's employment or other engagement of a candidate when the candidate accepts the position and in all cases prior to the candidate reporting for work with Client . . . (c) For each full-time candidate: 10% of the candidate's total annual gross compensation, or a minimum $2,000, whichever is greater.

Gazda provided appellees a credit card number for future payment.

Appellees provided potential applicant files, and appellants interviewed Kim Powers on November 9, 2020. Powers turned down appellants' original offer; however, they reached back out to her in late November, and she reconsidered. Powers sent an email informing appellants of her efforts to create a budget, locate an apartment, and obtain insurance. In a separate email, Powers indicated she could start on December 14. On November 30, 2020, Milligan told Powers her annual income would be "just over $54k." He asked Amber to confirm the amount for the referral fee, and she told him that based on ten percent of Powers' first year gross annual salary, the referral fee would be $5,408.00.

On December 2, 2020, Milligan told Powers they "authorized the referral fee charge with Amber and will notify the other agencies we were working with that we are no longer looking for a candidate." He confirmed her December 14 start date.

Appellees sent a final packet to appellants with a sample contract for them to finalize with Powers and information regarding payroll services. When Powers asked further questions about the process and indicated she did not trust Amber, Milligan reassured her, "I think we're done with Amber which is nice. My understanding is that she only wanted our referral fee and is now out of the picture. . . The contract will be filled out by us and reviewed/edited as needed by you before we sign." Powers said there was no rush on the contract, and she would be in town soon to finalize housing.

Powers ultimately decided not to work for appellants. Milligan expressed his confusion and told Powers, "To be clear, we authorized the 10% referral fee of $5,600 [sic] to Nanny Poppinz in good faith that we came to an agreement with you." Appellants requested a refund from appellees, but they refused based on the contract's no refund policy. Appellees provided the files of potential replacement nannies, but appellants refused to interview them.

Appellants filed suit for breach of contract, negligent misrepresentation/gross negligent misrepresentation, and violations of the DTPA. Appellees filed a pro se answer arguing, among other things, that they satisfied their obligations under the contract; therefore, appellants were not entitled to a refund or any other damages. The case proceeded to a bench trial and appellees appeared pro se.

During the bench trial, Gazda testified she read and signed Nanny Poppinz's form contract and provided a credit card for future payment. She admitted she told Amber they had settled terms with Powers and authorized the $5,408.00 charge. Gazda, however, denied hiring Powers or signing a contract for her employment. Amber testified appellants "engaged" Powers because Powers and appellants confirmed and agreed to an offered salary, which was further supported by appellants asking her to charge the referral fee.

The trial court found in favor of appellees and entered findings of fact and conclusions of law supporting the take-nothing judgment. Appellants filed a motion to modify the judgment asking the trial court to grant a default judgment against SSF

Consulting, LLC d/b/a Nanny Poppinz because it did not appear at trial. They further argued the evidence did not support the trial court's judgment because they never "employed" or "engaged" Powers per the contract. The trial court denied the motion, and appellants appealed.

## Default Judgment

In their first issue, appellants argue the trial court erred by not entering a default judgment against SSF Consulting, LLC because it was not represented by counsel and defaulted. Appellants rely on two established legal propositions: (1) a non-attorney may not appear for a limited liability company, (2) and when a defendant files an answer but does not appear at trial, the court may enter a default judgment. *See* TEX. R. CIV. P. 239; *see also J&A Coating, LLC v. PPG Indus., Inc.*, No. 05-20-00382-CV, 2021 WL 972899, at *2 (Tex. App.—Dallas Mar. 16, 2021, no pet.) (mem. op.). We disagree with both arguments.

When considering answers filed by non-attorney corporate officers, appellate courts have "gone to great lengths to excuse defects in answers to prevent the entry of default judgments against parties who have made some attempt, albeit deficient, unconventional, or flat out forbidden under the Rules of Civil Procedure, to acknowledge that they have received notice of the lawsuit pending against them." *Guadalupe Econ. Servs. Corp. v. Dehoyos*, 183 S.W.3d 712, 716 (Tex. App.—Austin 2005, no pet.) (quoting *Hock v. Salaices*, 982 S.W.2d 591, 593 (Tex. App.—San Antonio 1998, no pet.)). Thus, an answer filed on behalf of a corporation by a

non-attorney is sufficient to prevent a default judgment. *KSNG Architects, Inc. v. Beasley*, 109 S.W.3d 894, 899 (Tex. App.—Dallas 2003, no pet.).

Appellees, appearing pro se, filed a letter "From Defendants: Amber Mayhew, Keith Mayhew, and SSF Consulting, LLC DBA Nanny Poppinz," in response to "the papers" served on them. They also signed the letter on behalf of all defendants. During the bench trial, the court acknowledged the letter was sufficient to prevent a default judgment against Nanny Poppinz. Accordingly, appellees attempt to answer the lawsuit, despite doing so as non-lawyers on behalf of the LLC, was sufficient to excuse any defects and prevent a default judgment.

To the extent appellants argue Nanny Poppinz was not represented at trial, they ignore the trial court's finding that Nanny Poppinz forfeited its charter in 2019. They have not challenged this finding. Unchallenged findings of fact are binding on the appellate court unless the contrary is established as a matter of law. *See George P. Bane, Inc. v. Ballard*, No. 05-19-01459-CV, 2021 WL 1084586, at *4 (Tex. App.—Dallas Mar. 22, 2021, no pet.) (mem. op.). Appellants have presented no arguments or pointed to any evidence establishing, as a matter of law, that Nanny Poppinz's corporate charter was not forfeited during the time of their dispute. *See, e.g.*, *Johnson v. Dinh*, No. 05-19-00127-CV, 2020 WL 3026253, at *3 (Tex. App.—Dallas June 5, 2020, pet. denied) (mem. op.) ("Any unchallenged findings of fact that support the judgment will preclude reversal of the case.").

Appellants repeatedly acknowledged Nanny Poppinz was not a legal entity. They stated in their original petition the LLC was no longer in good standing. Counsel for appellants explained during pretrial discussions that the basis for suing appellees individually was because the corporate charter did not exist during the relevant time period. And during trial, appellants asked the trial court to take judicial notice of a printout from the Texas Secretary of State website indicating the corporate charter had been revoked at all times material to the suit.

The trial court could not grant a default judgment against a "terminated" legal entity. *See, e.g.*, *Donica Grp., LP v. Thompson Excavating, Inc.*, No. 05-19-00235-CV, 2020 WL 57340, at *3 (Tex. App.—Dallas Jan. 6, 2020, no pet.) (mem. op.) (noting corporate entity that forfeited charter was a "terminated entity" that "no longer existed" for purposes of defending a default judgment). Accordingly, the trial court properly denied appellant's request for a default judgment against Nanny Poppinz. Appellants' first issue is overruled.

**Breach of Contract and DTPA Violations**

In their second issue, appellants contend the trial court erred by granting a take-nothing judgment on their breach of contract claim because they never "engaged" or "employed" Powers as their nanny. They maintain the undisputed evidence establishes Powers never accepted the position, and they never reached an agreement with her; therefore, they were entitled to a refund of their deposit. They also argue the trial court erred by denying their DTPA claims because Nanny

Poppinz's website included false, misleading, and deceptive statements about the "no fee" policy.

We apply the same standards of review that apply to a jury's verdict when reviewing the sufficiency of the evidence to support the trial court's findings of fact and conclusions of law from a bench trial. *See MBM Fin. Corp. v. Woodlands Operating Co., L.P.*, 292 S.W.3d 660, 663 n.3 (Tex. 2009). When the appellate record contains a reporter's record, as in this case, findings of fact are not conclusive and are binding only if supported by the evidence. *Fulgham v. Fischer*, 349 S.W.3d 153, 157 (Tex. App.—Dallas 2011, no pet.).

We broadly construe appellants' brief as challenging both the legal and factual sufficiency of the evidence. Accordingly, to succeed on their legal sufficiency challenge, they must demonstrate the evidence conclusively establishes all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam). To succeed on their factual sufficiency challenge, appellants must demonstrate the finding is against the great weight and preponderance of the evidence. *Id.* at 242. In a factual sufficiency review, an appellate court considers and weighs all the evidence both supporting and contradicting the finding. *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998). We do not set the finding aside unless the evidence supporting it is so weak or so against the overwhelming weight of the evidence that the finding is clearly wrong and unjust. *Dow Chem. Co.*, 46 S.W.3d at 242.

We review a trial court's conclusions of law de novo to determine if the trial court drew the correct legal conclusions from the facts. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). We uphold conclusions of law if any legal theory supported by the evidence sustains the judgment. *Wyde v. Francesconi*, 566 S.W.3d 890, 895 (Tex. App.—Dallas 2018, no pet.).

The trial court found the following contractual provisions relevant to the dispute in question:

> i. ***Company is a referral agency and will make no guarantees***, representations or warranties ***about the qualifications, ability, credentials, suitability, or performance*** of the candidates referred. Signing up with or paying does not guarantee that it will refer or find a suitable candidate or replacement candidate. (Emphasis added by trial court).

> ii. ***Client shall pay*** Company the following ***upon Client's employment or other engagement of a candidate when the candidate accepts the position***, and in all cases prior to the candidate reporting for work with Client. . . ." (Emphasis added by trial court).

> iii. ***All fees are non-refundable, earned in full***, and immediately due and payable **when a Company referral results** either directly or indirectly ***in the engagement <u>or</u> employment*** by Client of a candidate introduced or referred to Client by Company. (Emphasis added by trial court).

> iv. Upon fulfillment of all the conditions listed herein, subject to the terms of this Agreement, if the initial full-time, part-time candidate leaves Client's employment within 180 days of placement, Company will make reasonable efforts to . . . provide additional referrals to Client.

> v. This Agreement is entered into by Company and Client ***without reliance upon any statement, representation, promise, inducement, or agreement*** not expressly contained herein. This Agreement ***constitutes the entire agreement*** between Company and Client and supersedes all prior oral and written agreements between Company and Client with

respect to the subjects covered in this Agreement. This Agreement shall not be amended or modified except in a mutually agreed upon writing signed by Client and an authorized representative of Company. ***Client represents that it has carefully read and fully understands the scope and effect of all of the provisions of this Agreement; that it has had all such time that it desires within which to consider this Agreement; that it has had the opportunity to consult with an attorney of its own choosing and at its own expense to review this Agreement; and that it has availed itself of this opportunity to the extent, if any, that it wished to do so.*** (Emphasis added by trial court).

The trial court found the terms "employment" and "engagement" were not defined in the contract and applied the definitions commonly used and understood as defined by Merriam Webster's Online Dictionary. It defined "engagement" as "an arrangement to meet or be present at a specified time and place."[1] It defined "employment" as "the act of employing" and defined "employing" as "to make use of someone or something."[2]

The trial court further found that (1) appellees referred Powers; (2) appellants engaged Powers as their nanny with a December 14, 2020 start date; (3) after engaging Powers, appellants paid the referral fee per the contract terms; and (4) Powers subsequently refused and failed to show up on her start date.

The trial entered the following conclusions of law:

The Plaintiffs to this action are sophisticated and highly educated consumers who acknowledge that they read and understood the scope and effect of the contract provisions and, to the extent they desired, were able to avail themselves of legal counsel. There was a valid contract between the parties. The parties performed their duties under

---

[1] The trial court indicated this definition appeared at 1a of the online dictionary.

[2] The trial court indicated this definition appeared at 1a of the online dictionary.

the contract. Defendants referred nannies to Plaintiffs, and Plaintiffs tendered payment for the referral upon their *engagement* of the nanny of their choice—Powers then failed and refused to perform. The fee Plaintiff paid to Defendants was non-refundable and fully earned at the point at which it was paid because it was conditioned upon "engagement" *or* "employment" of a nanny, and Plaintiffs had engaged Powers at the point of payment.

(Emphasis added by trial court).

Appellants challenge the trial court's construction of the contract and the sufficiency of the evidence supporting the trial court's application of the facts to the contract. They argue the trial court relied on incorrect definitions of "engagement" and "employment." They assert the trial court should have used the following definition of "engagement," which appears in Webster's Online Dictionary at 1b: "a job or period of employment especially as a performer." They further contend the trial court should have used the following definition of "employ," which appears at 1c(2): "to provide with a job that pays wages or a salary." Construing these definitions, appellants assert payment was due when a nanny was provided with a job, and because Powers never accepted the position, she was never "engaged." Therefore, the condition for payment never occurred.

When interpreting a contract, our primary concern is to ascertain and give effect to the written expression of the parties' intent. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011) (citing *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003)). By this approach, we "strive to honor the parties' agreement and not remake their contract by reading

–11–

additional provisions into it." *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010). "[I]t is objective, not subjective, intent that controls." *Matagorda Cnty. Hosp. Dist. v. Burwell*, 189 S.W.3d 738, 740 (Tex. 2006). We give words and phrases their ordinary and generally accepted meaning, reading them in context and in light of the rules of grammar and common usage. *See Gilbert Tex. Constr.*, 327 S.W.3d at 126. We also bear in mind the particular business activity to be served, and when possible and proper, we avoid a construction that is unreasonable, inequitable, and oppressive. *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005) (per curiam).

When a contract leaves a term undefined, we presume the parties intended its plain, generally accepted meaning and give the term its ordinary meaning. *Epps v. Fowler*, 351 S.W.3d 862, 866 (Tex. 2011). Often we consult dictionaries to discern the natural meaning of a common-usage term not defined by the contract. *Id.*

The trial court relied on the contractual term "engaged," rather than "employed," in concluding appellees did not breach. Regardless of whether we accept the definition used by the trial court ("an arrangement to meet or be present at a specified time and place") or the definition urged by appellants ("a job or period of employment" and defining "employ" as "to provide with a job that pays . . . a salary"), we reach the same conclusion. The contract required appellants to pay appellees ten percent of a candidate's total annual gross compensation "upon Clients . . . engagement of a candidate when the candidate accepts the position." Appellees

–12–

referred Powers to appellants, who in turn offered her a job, which she accepted. Powers agreed to start work on December 14, 2020, she agreed to a yearly salary of $54,080.00, and appellants authorized payment of the $5,408.00 referral fee. Applying the ordinary meaning of the contractual term, appellants "engaged" Powers per the contract.

Emails also indicated appellants believed Powers accepted the position. Specifically, Milligan told Powers he would notify other agencies they were no longer looking for a candidate. And, when Powers changed her mind, Milligan told her, "[W]e authorized the 10% referral fee of $5,600 [sic] to Nanny Poppinz in good faith that we came to an agreement with you." In a December 8, 2020 email to Amber, Milligan indicated he was "equally taken aback" by Powers's decision "as we have been in contact with her nearly daily since our agreement was reached." Contrary to appellants' position, nothing in the Nanny Poppinz contract required a signed agreement between the family and a nanny before payment of the referral fee.

Reviewing the evidence in the light most favorable to the verdict, the trial court's findings are supported by the record and, therefore, legally sufficient. *See Dow Chem. Co.*, 46 S.W.3d at 241. To the extent appellants testified they did not reach a final agreement with Powers, they never signed a contract with her, and they believed they did not "engage" or "employ" her, we conclude the evidence supporting the trial court's findings to the contrary are not so weak or so against the overwhelming weight of the evidence to be clearly wrong or unjust. *Dow Chem.*

–13–

*Co.*, 46 S.W.3d at 242. The trial court, as the factfinder in a bench trial, is in the best position to determine the candor, demeanor, and credibility of the witnesses, and we defer to its resolutions of conflicting evidence. *Martinez v. Martinez*, No. 02-21-00353-CV, 2022 WL 17986023, at *4 n.8 (Tex. App.—Fort Worth Dec. 29, 2022, no pet.) (mem. op.).

We reject appellants' challenges to the legal and factual sufficiency of the trial court's findings regarding the breach of contract claim and likewise conclude the trial court drew the correct legal conclusions from the facts. Both the contract's express terms and the record evidence supports the conclusion that the referral fee was nonrefundable and fully earned at the point appellants paid it "because it was conditioned upon 'engagement' *or* 'employment' of a nanny, and Plaintiffs had engaged Powers at the point of payment." Accordingly, the trial court properly entered a take nothing judgment on appellants' breach of contract claim.

We now consider appellants' claim under the DTPA. They argue Nanny Poppinz engaged in false, misleading, and deceptive acts because its website stated it had a "NO FEE Policy" and "does not charge a fee of any kind UNTIL we provide you with the nanny of your choice." The trial court found appellees did not make any false representations because they did not charge the referral fee until appellants told them they had engaged Powers (the nanny of their choice). As discussed above, the evidence supports the trial court's findings that appellees did not charge a referral fee until appellants hired Powers (the nanny of their choice), she accepted, and

–14–

appellants told appellees to charge their card. As such, the trial court properly entered a take-nothing judgment on appellants' DTPA claim because they failed to establish any false, misleading, or deceptive act. Appellants' second issue is overruled.

## Conclusion

We affirm the trial court's judgment.

/Erin A. Noewll/

ERIN A. NOWELL
JUSTICE

220675F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

DR. GREGORY MILLIGAN, M.D.
AND CHELLSE GAZDA, M.D.,
Appellants

No. 05-22-00675-CV        V.

AMBER MAYHEW, KEITH
MAYHEW, AND SSF
CONSULTING LLC D/B/A
NANNY POPPINZ, Appellees

On Appeal from the 116th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-21-05362.
Opinion delivered by Justice Nowell.
Justices Goldstein and Breedlove
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees AMBER MAYHEW, KEITH MAYHEW, AND SSF CONSULTING, LLC D/B/A NANNY POPPINZ recover their costs of this appeal from appellants DR. GREGORY MILLIGAN, M.D. AND CHELLSE GAZDA, M.D.

Judgment entered July 14, 2023.